OPINION OF THE COURT
Thomas Rainbow Morse, J.
*201 The defendants have moved for dismissal of their driving while intoxicated (DWI) charges because the State Police issued computer generated simplified informations (hereinafter referred to as e-tickets) rather than the multicopy handwritten simplified traffic informations used for decades across New York State (hereinafter referred to as UTTs). Since there are no reported cases regarding the validity of prosecutions based on e-tickets, these two cases were consolidated for purposes of a hearing at which the People presented testimony from the state troopers who arrested the defendants and from Lieutenant Leonard Casper, the officer in charge of technology for the New York State Police.[1] As such, he was responsible for coordinating the development of the software and protocols for the use of e-tickets by law enforcement in New York. While rigorous cross-examination of Lieutenant Casper by both defense counsel highlighted several serious areas of concern which might merit further consideration by the law enforcement community and the Legislature, the court finds that the e-tickets filed with this court together with hand signed supporting depositions provide a valid jurisdictional basis upon which these DWI cases may be prosecuted.
Simplified Traffic Informations and Supporting Depositions
The DWI charges in these cases were commenced by filing simplified traffic informations and supporting depositions rather than misdemeanor informations. Under our law as it applies in this case, such a simplified information is
“a written accusation by a police officer . . . filed with a local criminal court, which charges a person with the commission of one or more traffic infractions and/or misdemeanors relating to traffic, and which, being in a brief or simplified form prescribed by the commissioner of motor vehicles, designates the offense or offenses charged but contains no factual allegations of an evidentiary nature supporting such charge or charges. It serves as a basis for commencement of a criminal action for such traffic offenses, alternative to the charging thereof by a regular information, and, under circumstances prescribed in section 100.25, it may serve, either in *202 whole or in part, as a basis for prosecution of such charges.”[2]
As noted by the Court of Appeals, “[t]he simplified information is a statutory creation designed to provide an uncomplicated form for handling the large volume of traffic infractions and petty offenses for which it is principally used. It need not provide on its face reasonable cause to believe defendant has committed the offense.”[3] When standing alone, it “must be substantially in the form prescribed by the commissioner of motor vehicles.”[4] Two factors distinguish a simplified information from other local court accusatory instruments. First, although it contains specific information regarding the offense, it does not contain “factual allegations of an evidentiary nature.” Secondly, unlike informations, misdemeanor and felony complaints, a simplified information is not a “verified written accusation.”[5]
If requested, sworn facts will be provided in a supporting deposition from the arresting officer which must “contain! ] allegations of fact, based either upon personal knowledge or upon information and belief, providing reasonable cause to believe that the defendant committed the offense or offenses charged.”[6] Importantly, this deposition must be “subscribed and verified.”[7] The facts, however, need not be handwritten. Our highest court has sanctioned the use of “fill in the blank” supporting depositions in DWI cases noting that “the factual statements in the deposition are communicated by check marks made in boxes next to the applicable conditions and observations signifying the complainant’s allegations as to the existence of those conditions and the truth of those observations.”[8]
*203 Troopers Loewke and Blum hand signed similar “fill in the blank” verified depositions in the cases before this court. As observed by the Court of Appeals, “[a] verification attesting to the truth of the contents of a document on penalty of perjury is of the same effect as a testimonial oath, which at once alerts a witness to the moral duty to testify truthfully and establishes a legal basis for a perjury prosecution.”[9] The failure to properly verify a supporting deposition may result in a jurisdictionally defective accusatory instrument which is subject to dismissal.[10]
It is within this legislative and common-law context that, as the millennium approached, several segments of state government began thinking about the opportunities presented by maturing computer technologies. The New York State Police and Department of Motor Vehicles started studying e-tickets and the efficiencies of data entry, transfer and retrieval which they presented.[11]
*204 E-Tickets and the Electronic Signatures and Records Act
The advent of the Electronic Signatures and Records Act (ESRA),[12] recognized that we had entered a new era in the public and private sectors “relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities,”[13] and the rules accompanying the legislation were intended “to be flexible enough to embrace future technologies that comply with ESRA”[14] by giving “governmental entities the greatest latitude to determine the most effective protocols for producing, receiving, accepting, acquiring, recording, filing, transmitting, forwarding and storing electronic signatures and electronic records within the confines of existing statutory and regulatory requirements regarding privacy, confidentiality and records retention.”[15] The electronic records encompassed by the statute include “information, evidencing any act, transaction, occurrence, event, or other activity, produced or stored by electronic means and capable of being accurately reproduced in forms perceptible by human sensory capabilities.”[16]
State law predated federal legislation in this area[17] and in 2002, the New York definition of “electronic signature” was circumscribed to provide symmetry with federal law.[18] Since then, an electronic signature has meant “an electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record.”[19] The statutory framework and legislative history of ESRA illustrate that its main focus is on *205 commercial and public record applications rather than law enforcement use. Nonetheless, based on the testimony presented before this court, it would appear that the decision to substitute e-tickets for the often illegible multiple copy uniform traffic tickets was an appropriate and logical extension within the purview of ESRA.
Accordingly, the court finds no difficulty in accepting the statutory propositions that “[t]he use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand,”[20] and that “[a]n electronic record shall have the same force and effect as those records not produced by electronic means.”[21] What troubles the court is that with regard to accusatory instruments certain additional statutory safeguards and procedural protocols may be in order.
Development and Processing of E-Tickets Following ESRA
During the hearing, it became clear that in early 2001, the New York State Police, the Department of Motor Vehicles (DMV), the Division of Criminal Justice Services (DCJS), the Office of Court Administration (OCA), the State Magistrate’s and Court Clerk’s Associations among others became involved in a project to explore the possibility of using e-tickets to replace handwritten uniform traffic tickets.[22] After reviewing the concerns and needs of all affected parties, the State Police chose Traffic and Criminal Software (TRACX) to be used for the project and a pilot program was initiated in Warren County in November 2001.[23] Following a successful refinement process there, the program was made available statewide. TRACX was used by the State Police in both of the cases before this court.[24]
Under the TRACX system, the police car must be equipped with a computer terminal, a printer and a bar code scanner *206 which also functions as a digital imager.[25] When issuing a ticket under the Vehicle and Traffic Law, a trooper clicks on the computer screen icon to enter the program and types in his or her user name and personal password. The computer then brings up the appropriate template which is immediately populated with information unique to that trooper including the trooper’s electronic signature which he or she had previously scanned into the computer.[26] At that point, the e-ticket is blank in many respects and does not contain any information relating specifically to the individual being ticketed.[27] Using the bar codes on the defendant’s license and registration, the officer scans them electronically, inserting on the ticket information relating to the driver and the car stopped.[28] After the template is populated with that data, the trooper manually inserts information regarding the type of arrest, location of the offense, section of law violated (including miles per hour if appropriate), court data and future date of the defendant’s appearance to answer the ticket.[29] Once all the data has been entered, the trooper checks a button to validate the ticket, a process which alerts the trooper to any misentries and provides an opportunity for the trooper to correct any errors.[30] After any corrections have been made, the trooper clicks on the validate button. According to the testimony at the hearing, validating the ticket is not the same as electronically signing it. Once the ticket has been validated, a copy is printed out for the driver. It is only when the ticket is printed that the information is “locked” in the computer and cannot be altered by the trooper or his or her supervisors.[31] If multiple tickets are issued to the driver, the trooper has the option to click on the button marked “replicate” and a copy of the ticket appears already populated with trooper, driver, car, location and court information to which the trooper can then add the specific section of the Vehicle and Traffic Law allegedly violated.[32] After the trooper’s tour of duty, all simplified informations issued are downloaded into the computer at the state police substation and *207 through a series of network connections are distributed to OCA and DMV among others.[33]
Through cross-examination at the hearing it became apparent that e-tickets differ in a number of important respects from UTTs.[34] First, with e-tickets there is only one document: the simplified traffic information. Everyone receives a duplicate original of the e-ticket with the arresting officer’s electronic signature affixed. Second, the e-ticket is printed in one color. Third, it is one-sided. While in the court’s view, it would be advisable for the Commissioner of Motor Vehicles to more specifically delineate regulations regarding the form of electronic tickets as has been done with UTTs,[35] the e-tickets still “conform substantially to a paper ticket”[36] and are not a basis for dismissal since on its face the e-ticket “substantially conforms to the requirement therefor prescribed by” the Criminal Procedure Law, Vehicle and Traffic Law and the Commissioner’s regulations.[37]
The fourth difference, however, is more problematic: the e-ticket is “signed” before any information regarding the traffic stop is placed on the ticket. Thus, the arresting officer is signing an essentially blank document. If a simplified information was required by law to be verified, this distinction alone would be fatal to an e-ticket since the signature affirms only what appears before it in the document.[38] In the case of e-tickets, the arresting officer would be affirming nothing specifically relating to the motorist, the vehicle or the offense allegedly committed since none of that information is entered on the e-ticket until after it is electronically signed. Since the Commissioner’s rules *208 indicate that an arresting officer’s signature on a UTT “constitutes the affirmation of the information under penalty of perjury,”[39] the absence of such a provision in the rules relating to e-tickets is troubling to the court. What rescues the prosecution in these cases is the fact that the “fill in the blank” supporting depositions were not generated electronically but were hand signed by the troopers.[40]
While the simplified informations charging these defendants with DWI are sufficient, it is respectfully suggested that the Legislature and the Commissioner of Motor Vehicles work with dispatch to address some of the concerns raised by this opinion. While the bill recently passed by our State Senate may be a first step in this process,[41] our common-law traditions dictate that further steps should be taken.
Recommendations For Regulatory and Legislative Action Regarding E-Tickets
Since the Criminal Procedure Law and Vehicle and Traffic Law defer in great measure to the Motor Vehicle Commissioner’s rule-making authority, the most expedient changes may be accomplished by amending the rules relating to e-tickets.[42] Specifically, the rules should describe in detail the form of the ticket to make it clear that it is one-sided and in one color. The rules should set forth a type size and location on the e-ticket for notice with regard to how one may appear and answer a ticket as well as sanctions which may be imposed for failure to appear.[43] More importantly, the rules should require that the last act by an officer issuing an e-ticket should be to click on an “I affirm” button on the computer which is preceded on the screen by a form notice which mirrors that on the simplified information that indicates it is “affirmed under penalty of perjury.” As Lieutenant Casper candidly admitted at the hearing, there is no *209 reason why the software can’t be reprogrammed to accomplish such an affirmation.[44]
While such rule changes may be sufficient where prosecutions are based on simplified informations alone, they may not go far enough in those cases where a supporting deposition is prepared to accompany the e-ticket. In those cases, the court respectfully suggests that the Legislature needs to make a number of amendments to the Criminal Procedure Law and Vehicle and Traffic Law. First, since the more restrictive definition of “electronic signature” was deleted from ESRA solely because of compatibility concerns in commercial applications, that or similar language should be incorporated into a Criminal Procedure Law definition of “electronic signature” to appear in section 1.20.[45] That definition would then define such a signature not only for e-ticket supporting depositions, but could also be used in conjunction with other accusatory instruments and papers filed with the criminal courts. The CPL article defining verification should be amended to refer to the new protections in CPL 1.20 for electronic signatures and then explicitly state that a verifying signature can be signed electronically as long as those safeguards are in place.
Obviously, the most important facet of an electronic signature used in our criminal courts must be the insistence that the electronic signature can be affixed only by a knowing and purposeful act by the person intending to sign the document. That could be accomplished by clicking on a form notice indicating the signer’s acknowledgment that “false statements made therein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.”[46] Such an act would be similar to what computer users do when they install a new program on their computers and agree to the terms of the software developer in order to activate the program. Or, the individual could sign a pressure sensitive screen after viewing the document and reading a verification notice or being sworn by a court, notary or *210 desk sergeant.[47] That process would be similar to that undertaken by customers who pay with a credit or debit card at some retail outlets. It would appear that in the latter cases, the person before whom the individual swore to tell the truth would also have to electronically sign the document. It would seem prudent to also add to articles 100, 150 and 170 of the Criminal Procedure Law, as well as section 207 of the Vehicle and Traffic Law which presently does not reference either simplified informations or e-tickets — rather by its terms it covers issuance of a “uniform traffic summons and complaint.”
Conclusion
Until the suggested changes to the TRACX protocol regarding the timing of electronic signatures being affixed to supporting depositions are made, prosecutions by electronic ticket using only such signatures on supporting depositions may be seriously flawed. At the very least, in cases such as these wherein a conviction becomes a predicate for a felony prosecution with its attendant potential for civil disabilities (such as the loss of the right to vote), general orders for troopers and arresting officers should require them to send a hard copy of the supporting deposition to the court with a second handwritten signature affixed following the perjury notice and just before or after the electronic signature. While our laws should be flexible enough to account for technological innovations which foster greater accountability, increased information availability and fiscal responsibility, our common-law traditions dictate that a defendant’s due process rights deserve at least an equal footing.
Because the supporting depositions filed with the court in each of these cases bear original signatures, the motions to dismiss the DWI charges are denied.[48]
[Portions of opinion omitted for purposes of publication.]

. Although rarely used, the Criminal Procedure Law does provide for the possibility of a factual hearing where the insufficiency of a local court accusatory instrument is alleged. GPL 170.45, 210.45 (6).

. CPL 100.10 (2) (a); see also CPL 1.20 (2), (5); 150.50 (1).

. People v Nuccio, 78 NY2d 102, 104 (1991) (citations omitted).

. CPL 100.25 (1); see also People v Nuccio, at 104.

. CPL 100.10 (3), (4), (5); see also CPL 100.30 (1). Prior to the enactment of the Criminal Procedure Law, the Court of Appeals held that allowing prosecution for a misdemeanor DWI based on a “mere unverified summons” denied a defendant “an essential guarantee . . . of a fundamental right, namely, that he be not punished for a crime without a formal and sufficient accusation.” People v Scott, 3 NY2d 148, 153 (1957). In this court’s view, however, the precedential value of this holding was vitiated by the CPL’s new statutory framework which provides a right to a verified supporting deposition.

. CPL 100.25 (2); see also CPL 150.10 (2).

. CPL 100.20.

. People v Hohmeyer, 70 NY2d 41, 43 (1987). A valid accusatory instrument is a nonwaivable jurisdictional prerequisite to a valid local court prose *203 cution and that issue may be raised at any time during the proceeding including being raised for the first time on appeal. People v Peacock, 68 NY2d 675 (1986); People v Alejandro, 70 NY2d 133 (1987). The supporting deposition is akin to the factual portion of other local court accusatory instruments. However, as “long as the factual allegations of an [accusatory instrument] give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” People v Konieczny, 2 NY3d 569, 575 (2004) (citation omitted); see also People v Casey, 95 NY2d 354, 360 (2000); People v Allen, 92 NY2d 378, 385 (1998); compare People v Thomas, 4 NY3d 143, 146 (2005) and People v Inserra, 4 NY3d 30, 32 (2004).

. Matter of Neftali D., 85 NY2d 631, 635-636 (1995) (citations omitted).

. Matter of Neftali D. at 636; compare People v Holmes, 93 NY2d 889, 890-891 (1999) (in verifying an accusation the complainant must appreciate the significance of that act) with Matter of Shirley v Schulman, 78 NY2d 915, 917 (1991) (“[i]nasmuch as neither the notice of violation nor the complaint violation was verified pursuant to CPL 100.30, they were not valid as accusatory instruments”). In a case prosecuted by simplified information, if a supporting deposition is requested in a timely fashion, the failure to provide one within the established time frame “renders the simplified information insufficient on its face.” CPL 100.40 (2).

. According to Lieutenant Casper’s testimony before this court, the New York State Police recognized in early 2000 that with over 3.9 million handwritten uniform traffic tickets having been issued the year before, advances in computer technology could offer some real benefits to law enforcement, the Department of Motor Vehicles and the courts. Transcript of proceedings on June 25, 2005 at 22-23.

. This part of the State Technology Law became effective on March 27, 2000.

. State Technology Law § 302 (1).

. 9 NYCRR 540.1 (c).

. 9 NYCRR 540.1 (f). The statutory business record exception, CPLR 4518, was amended to incorporate ESRA’s provisions and ESRA incorporates its provisions by reference into our rules of evidence under the CPLR. State Technology Law § 306.

. State Technology Law § 302 (2).

. Electronic Signatures in Global and National Commerce Act (15 USC § 7001 et seq.).

. Laws of 2002 (ch 314, § 1).

. State Technology Law § 302 (3). Before the change, such an electronic signature also included an
“identifier, including without limitation a digital signature, which is unique to the person using it, capable of verification, under the sole control of the person using it, attached to or associated with data in such a manner that authenticates the attachment of the signature to particular data and the integrity of the datatrans *205 mitted, and intended by the party using it to have the same force and effect as the use of a signature affixed by hand.”
This portion of the law was deleted from State Technology Law § 102 (3), the predecessor statute to section 302 (3), in 2002 (L 2002, ch 314, § 2).

. State Technology Law § 304 (2).

. State Technology Law § 305 (3).

. Transcript at 22-24, 73.

. Transcript at 20.

. It appears TRACX, which was originally developed in Iowa with federal support, is now in use in 24 states and two Canadian provinces and is utilized by 156 law enforcement agencies here in New York State. Transcript at 20, 23, 31.

. Transcript at 31.

. Transcript at 33.

. Transcript at 39-43.

. Transcript at 32-33. Absent those documents, the trooper enters the information manually.

. Transcript at 44-46.

. Transcript at 47-49, 77.

. Transcript at 87. The TEACX administrator is the only person able to alter information at that point. Id.

. Transcript at 82.

. Two flow charts were entered into evidence showing the electronic trail of a simplified information. The New York State Police (NYSP) substation computer transmits the informations and depositions entered by each trooper to a NYSP secure network. From their central computer it is then made available to the New York Statewide Police Information Network (NYSPIN), a secure network. From the NYSPIN it is transferred to a secure state repository or gateway server. From there it is made available to OCA and DMV secure networks, DCJS and the Department of Transportation database. The OCA network then makes the simplified informations and supporting depositions available to the courts.

. See generally 15 NYCRR part 91 — Uniform Traffic Ticket.

. See Vehicle and Traffic Law §§ 207, 215.

. 15 NYCRR 91.21 (c).

. CPL 100.40 (2).

. Compare People v Smith, 258 AD2d 245, 250 (4th Dept 1999) (preprinted seal and signature on blank DMV abstracts provide insufficient authentication), lv denied 94 NY2d 829 (1999).

. 15 NYCRR 91.18; see also 15 NYCRR 91.11 (a).

. Lieutenant Casper testified that the only computer generated depositions with electronic signatures used by the State Police at that time were filed in speeding cases. Since depositions filed in conjunction with simplified informations must by law be verified, such electronically presigned depositions may be juris (fictionally invalid.

. 2005 NY Senate Bill S 4022.

. 15 NYCRR 91.21.

. The notice regarding failure to appear would seem to be especially important to prosecutors in light of recent rulings regarding proving knowledge of license suspension in aggravated unlicensed operation cases. See People v Pacer, 21 AD3d 192 (4th Dept 2005).

. The Lieutenant was asked:
“Is there any reason that you know, given your background in technology, why you couldn’t create the program that says ‘okay, we validated everything first round, everything is correct, now, Trooper, either you’re going to sign it or decide that you’re not going to sign the ticket.’ Any reason you couldn’t do it at that point?”
He replied, “No sir. No reason at all.” Transcript at 54.

. See the language quoted in n 19, supra at 204.

. See CPL 100.30 (1) (d).

. See CPL 100.30 (1) (a), (b), (c), (e).

. The motions filed and the court’s oral decision encompassed a number of issues; this written decision, however, addresses only the sufficiency of the e-tickets charging DWI.