OPINION OF THE COURT
David W. Fryer, J.
The defendant Edward J. Patanian was charged under Vehicle and Traffic Law § 1192 (2), (3) and § 1180 (d) via simplified traffic informations for each charge, along with supporting depositions relating to the same. The defendant was arraigned on June 25, 2007 and the arraignment was adjourned for purposes of a prompt suspension hearing. On July 9, 2007 the matter was reconvened; the defendant was represented by legal counsel, Peter Gerstenzang, Esq. of Gerstenzang, O’Hern, Hickey & Gerstenzang. Although noticed as to the hearing, no one from the Rensselaer County District Attorney’s office was present.
Trooper Michael Burns, the arresting officer in this case, was subpoenaed by the defendant and appeared on the hearing date. Attorney Kevin Bruen, Assistant Counsel for the State Police, appeared. After some lengthy discussions on the record, Mr. Bruen decided he would not participate in the proceeding.
This court made the initial findings that the documents appeared to be sufficient on their face, charging one count under Vehicle and Traffic Law § 1192 (2), and also that there was proof, in certified form, indicating that defendant was driving a motor vehicle while his blood alcohol count was over .08 of one percent or *300 higher. The defendant was then given the opportunity to offer proof tending to rebut those preliminary findings of this court.
After the testimony of Trooper Burns and the submission of certain related exhibits, the matter was adjourned. Counsel for the defendant submitted a written memorandum in support of their position. No similar papers were filed in opposition.
In the first instance, the defendant claims the charging documents do not comply with CPL 100.40, due in part because the electronic signature is not properly validated in the simplified traffic information. Obviously this argument would draw into question not only those simplified traffic informations made part of this case, but also most or all other simplified traffic in-formations issued statewide. Specifically, the process used in issuing electronic simplified traffic informations is the inputting of information into a system and thereafter the printing of a simplified traffic information by the issuing officer which includes a programmed signature. In this case, Trooper Burns testified that in fact that same process was used when issuing the Patanian documents. The crux of the defendant’s argument here is that while the simplified traffic information sets forth the words “Affirmed under penalty of perjury” and then the preprinted signature of Trooper Burns, the affirmation is ineffective because no actual signature is physically made and no other act suggesting some other acknowledgment or affirmation was made.
The authority for an electronic signature rests in the Electronic Signatures and Records Act as set forth in section 304 of the State Technology Law. Subdivision (2) of section 304, in part, reads as follows: “an electronic signature may be used by a person in lieu of a signature affixed by hand. The use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand.” At the outset, the question remains as to what affirmation or verification is necessary with respect to a simplified traffic information standing alone. Criminal Procedure Law § 100.10 (2) (a), in sum, defines a simplified traffic information as a written accusation by a police officer involving a traffic related infraction or misdemeanor in a simplified form. This definition does not suggest that a verification or affirmation is required. The definition makes clear that this simplified form is intended to be an alternative to a regular information and may be used as a basis for the prosecution of the charges referenced on the simplified traffic information. Regulations of the Commissioner of the Department of Motor *301 Vehicles (15 NYCRR) § 91.11 requires the issuing officer of a paper and multiple-part uniform traffic ticket to sign and swear or affirm under penalties of perjury as to the information placed upon the ticket. Section 91.21 of those same regulations deals with the issuance of electronic tickets and requires that the electronic tickets substantially conform with the requirements of the paper ticket (15 NYCRR 91.21 [c]). While there is some semblance that an affirmation is required, it remains unclear whether the lack of an affirmation invalidates the simplified traffic information.
The case law on this subject deals mainly with the issue of the electronic signatures and the use of the TRACX system to issue tickets and supporting depositions at the scene of the arrest from the officer’s vehicle. In People v Rose (11 Misc 3d 200 [Rochester City Ct 2005]), the court acknowledged the problem with the timing of a preprogrammed signature and affirmation of an officer issuing a simplified traffic information, but ruled the supporting deposition, which was served along with the uniform traffic ticket, otherwise resurrects the defective uniform traffic ticket if it is properly verified or affirmed. A similar finding was made in People v Corletta (12 Misc 3d 666 [Webster Just Ct 2006]), where- the Corletta court took a less stringent approach and decided that any electronically signed uniform traffic ticket, accompanied by a verified or affirmed supporting deposition issued simultaneously, was valid on its face.
The defendant, through his counsel, found fault with both of the above decisions arguing, in part, that the simplified traffic information is an accusatory instrument, as compared to a supporting deposition which supplements the charging document but has no independent application standing alone. As a result, any verification of the supporting deposition in no way validates the simplified traffic information. In addition, defendant’s counsel relies primarily on People v Smith (258 AD2d 245 [4th Dept 1999]). In Smith, the Fourth Department concurred with the lower court that a Department of Motor Vehicles driving abstract was not admissible because it was not properly authenticated. In essence, the attestation and seal of the Commissioner of the Department of Motor Vehicles were preprinted on blank forms used later to detail a person’s driving abstract. As a result, there is no assurance that the information on the abstract was true and accurate.
This court is of the opinion that some affirmation or verification is necessary on a simplified traffic information or uniform *302 traffic ticket. CPL 100.25 (1) states very clearly that “[a] simplified information must be substantially in the form prescribed by the commissioner of motor vehicles.” That form is referenced in the regulations of the Commissioner at 15 NYCRR 91.11 and 91.21. As set forth above, under those regulations a uniform traffic ticket requires an oath or affirmation.
In this case, the affirmation is on the uniform traffic ticket; however, it is not an original signature, rather it was a signature preprogrammed into the system onto an otherwise blank form. While this court understands the rationale with respect to the timing of the affirmation and the need for some act tending to verify the information on the uniform traffic ticket, the importance of the same under these circumstances is suspect. In this case, Trooper Burns filled out the uniform traffic ticket personally using the TRACX system within his vehicle. There are no allegations that a third party aided in the process or helped prepare the uniform traffic ticket in any way. By both printing and serving a uniform traffic ticket bearing his signature, Trooper Burns acknowledged as accurate the information on the ticket. Under those circumstances, the need for a prompt or additional button formally affirming the uniform traffic ticket seems redundant in nature. The language of the statute under the Electronic Signatures and Records Act, in State Technology Law § 304 (2), confirms that the electronic signature will have the “same validity and effect” as one handwritten. No language under the statute exists specific to any timing of the signature.
The fact that there was a verified supporting deposition in this case, similar to the Rose and Corletta cases above, adds to the overall compliance with the statute with respect to the affirmation issues, but is not in and of itself controlling. The argument by the defendant that the supporting deposition is not an accusatory instrument and therefore the verification of the same should not resurrect the simplified traffic tickets, fails to consider the true connection between the documents. CPL 100.40 states succinctly that the failure of the officer to provide a supporting deposition to a defendant, after a timely request, deems the accusatory simplified traffic information defective. The interconnection between the simplified traffic information and the supporting deposition is such that a simplified traffic information could be dismissed outright if the supporting deposition is not prepared and provided. Given this, the reliance on the supporting deposition by the Rose and Corletta courts is not misplaced; however, this court does not find it a necessity.
*303 This court is not swayed with respect to the holding in Smith referenced above. The distinctions are clear. In this case, the Trooper was present in court and was able to verify his own signature. The only true issue was the timing of the signature and therefore whether a verification of the information on the simplified traffic ticket was made. In Smith there was an attempt to admit a driving abstract into evidence with an improper certification and other foundational issues. No person was present in court from the Department of Motor Vehicles to verify the document. The simple difference between what is a charging document with an individual’s signature, prepared and issued by that same person, and a business or government document where potentially hundreds of persons may have had access to that information, should be readily apparent. The real issue under Smith relates to CPLR 4540 and the authenticating of a copy of a public record, normally by one having legal custody of the same (see CPLR 4540 [b]). The certification makes the document self-authenticating and therefore admissible as an exception to the hearsay rule without the need to create a foundation (see People v Sykes, 167 Misc 2d 588 [1995]). In the instant action it would appear that the simplified traffic information may well be an original document and not a copy, given the preparation within the State Police vehicle and the service immediately thereafter. Under those circumstances there would be no need to certify the document. As referenced above, this court has taken the position that the officer met all requirements under the Electronic Signatures and Records Act by preparing the simplified traffic informations personally and thereafter printing them and immediately serving same to the defendant allegedly at the time of the arrest. As a result, no further or additional authentication or affirmation is required.
The second and third issues raised by the defendant involve the proper certification and reliability of the breath test. It is the defendant’s position that the certification on the breath alcohol analysis record submitted by Trooper Burns is improper because it fails to set forth proof of the accuracy of the test. In essence, it is the defendant’s position that Trooper Burns, as the party who placed a certification on the breath alcohol analysis record, was not in a position to gauge whether the machine was properly calibrated and working properly. Further, the defendant suggests there was no language within the certification tending to verify whether the machine was properly maintained and by whom, as required under CPLR 4518 (c).
*304 In the correct context, this court would agree that the defendant’s argument has merit. It is important to note that the evidence in question was raised and contested by the defendant’s rebuttal as part of a prompt suspension hearing under Vehicle and Traffic Law § 1193 (2) (e) (7). Specifically, the threshold requirements under Vehicle and Traffic Law § 1193 (2) (e) (7) to be met by the court prior to suspending a person’s privilege to drive in New York State are as follows:
1. The accusatory instruments must comply with the requirements of CPL 100.40.
2. There must exist “reasonable cause” to believe the defendant operated a motor vehicle while having .08 of one percent or more by weight of alcohol in their blood by chemical analysis of such person’s blood, breath, urine or saliva.
Clearly the standard here is far from that of the “beyond a reasonable doubt” requirement for a criminal conviction. While this court is mindful that the taking of a person’s driving privilege is a serious matter that carries with it substantial consequences to the driver, those factors do nothing to alter the statutory standard of “reasonable cause.”
In making the initial determinations under section 1193 (2) (e) (7), this court relied on the accusatory instruments and the breath alcohol analysis record prepared and certified by Trooper Burns. The certification made part of the referenced report sufficiently meets the requirements under CPLR 4518 (c). The balance of this court’s review of the documents allowed for a “reasonable cause” finding that the defendant was driving a motor vehicle with breath alcohol of over .08 of one percent. During the rebuttal portion of the hearing, defendant’s counsel raised issues of the proper operation of the machine, along with the status of the Trooper as a records custodian.
Upon reviewing the issues raised under CPLR 4518 in rebuttal, while it is clear the Trooper made statements which, in part, contradicted the certification placed upon the breath alcohol analysis record, this court is satisfied that the document speaks for itself. To take another position would suggest that this court made an indirect finding that Trooper Burns filed a false certification under penalties of perjury. In any event, even if the record was deemed to be hearsay in the first instance due to a defective certification under CPLR 4518 (c), it was revived and admitted during cross-examination by the testimony of Trooper Burns during the hearing as per CPLR 4518 (a). The information placed upon the same document is no less accurate *305 as a result of the testimony and, given the reasonable cause standard (in other words a prima facie finding), the testimony fails to overcome the initial findings referenced above required for a prompt suspension of the defendant’s license. Similarly, the testimony elicited specific to the proper operation of the machine in question does not, without more, call into question whether the test findings were somehow jeopardized. If it would appear to reach such a point, an expert, suggesting with some specificity the errors of the Trooper when conducting such testing, may well be necessary. Upon reading the transcript of the hearing, this court is unable to decipher what, if any, errors were made and how those potential errors affected the outcome of the testing. As stated above, under a “beyond a reasonable doubt standard” a different result may well have been reached. Because the prompt suspension hearing was intended to be abbreviated and directed to only a few points, the analysis and findings should be likewise.
In this case, the court’s initial findings are sustained. For reasons unrelated to this decision, including timing, the defendant’s license will not be suspended pending prosecution.