OPINION OF THE COURT
Peter B. Skelos, J.
*237 In this summary proceeding the petitioner seeks to evict the respondents, who are alleged to be licensees, from the residential premises located at 17 Morgan Drive, Old Westbury, New York. The respondents by their answer contest the service of the notice to quit as well as the service of the notice of petition and petition. The parties consented to a traverse hearing.
THE LAW GOVERNING SERVICE IN A SUMMARY PROCEEDING TO REMOVE A LICENSEE
No landlord-tenant relationship exists where the respondents are alleged to be licensees. A licensee is a person who enters .the premises with the permission of a person entitled to possession. A summary proceeding to remove a licensee may be commenced only after the permission has been revoked (RPAPL 713 [7]). Accordingly, the party claiming entitlement to possession of the premises must serve the licensee with a notice to quit advising the occupant to leave the premises by a date certain and further that a summary proceeding will be commenced to evict the occupant in the event he fails to vacate the premises (RPAPL 735, 713 [7]).
The notice to quit must be served not less than 10 days prior to the commencement of the summary proceeding (RPAPL 713). The notice to quit must be served in the manner prescribed by RPAPL 735 for the service of a petition and notice of petition (RPAPL 713).
RPAPL 735 authorizes service to be made by personal delivery to the respondent by substituted service upon a person of suitable age and discretion at the subject premises or by affixing the papers to a conspicuous place or by placing the papers under the entrance door of the premises sought to be recovered (RPAPL 735 [1]). In the event substituted service or conspicuous service is the method of service employed, then the papers must be mailed to the occupant by registered or certified mail and by regular first class mail addressed to the occupant at the subject premises within one day of the substituted delivery or the conspicuous placement (RPAPL 735 [1] [a]).
CONTENTIONS OF THE PARTIES
Respondents contend that there was a failure to comply with the service requirements set forth in RPAPL 735 in two respects. First, respondents allege there is no proof that the U.S. Postal Service treated the envelopes with certified mail stickers as certified mail (see, Marrero v Escoto, 145 Misc 2d *238 974). In addition, respondents contend that Mr. Simon’s act of dropping the envelopes in the mailbox on Sunday, December 17, 1995, was service in violation of General Business Law § 11. Toward that end respondents refer the court to CPLR 2103 (f) (1) (incorrectly cited as CPLR 2105 [f] [1]), Sport-O-Rama Health & Fitness Ctr. v Centennial Leasing Corp. (100 AD2d 584 [2d Dept 1984]) and Vita v Heller (97 AD2d 464 [2d Dept 1983]).
Petitioner contends that the U.S. Postal Service treated the mailings as certified mail and that there was no violation of General Business Law § 11.
FINDINGS OF FACT
Petitioner’s only witness was his process server, Seymour Simon, who is the president of County Process and Lawyer’s Service, Inc. The court finds that the service of the 10-day notice to quit was made as follows.
Mr. Simon attempted to personally serve the 10-day notice on the respondents on December 14, 1995 and again on December 15, 1995, at which times there was no response at the door of the subject premises. On December 16, 1995, Mr. Simon returned to the subject premises and again attempted to personally serve the respondents. The person who answered the door refused to identify himself. Mr. Simon told the person to shut the door and he then properly affixed the notice to the door. The following day, Sunday, December 17, 1995, Mr. Simon placed copies of the notice in envelopes addressed to each of the respondents and mailed them to each respondent by regular first class mail. Mr. Simon also sent copies of the notice to the respondents in envelopes which had certified mail labels attached to each together with the correct postage in the amount of $1.42. All of the mail was delivered by Mr. Simon to official mailboxes but not to a post office. Mr. Simon completed the U.S. Postal Service receipt for certified mail (PS Form 3800) for each envelope. The envelopes were identified by separate article numbers which corresponded to the article numbers on the PS Form 3800s. The official records of the U.S. Postal Service demonstrate the efforts of the Postal Service to deliver those envelopes to the respondents on December 21, 1995. The delivery notice/reminder receipts (PS Form 3849) which reference each of the above article numbers describe the envelopes as "certified” mail and that those envelopes were held at the post office after there was no one present at the subject premises to accept delivery. In addition, those records *239 document that Christine Kangelaris picked up the envelopes at the post office on December 21, 1995.
The notice of petition and petition were personally delivered to Marigo Kangelaris on January 6, 1996 at 10:56 a.m. at the subject premises. Mr. Simon left additional copies with Mrs. Kangelaris for the respondent Petros Kangelaris and the "John Doe” respondents. On that same day, he mailed copies of the petition and notice of petition in envelopes addressed to Petros Kangelaris and "John Doe” by certified mail and regular first class mail by depositing them in an official U.S. Postal Service box with the required appropriate postage.
CONCLUSIONS OF LAW
In Marrero v Escoto (supra) the respondent contested service of the 10-day notice allegedly made by conspicuous placement and mailing service. The Appellate Term dismissed the proceeding with the following language: "In the absence of proof by the petitioner that this envelope had the proper postage for certified mail, or the absence of any stamp by the post office to establish that the envelope was treated as a certified mail, it is the conclusion of this court that petitioner has failed to establish that the certified mail copy was ever sent to the appellant” (145 Misc 2d, at 975 [emphasis supplied].)
The records of the U.S. Postal Service clearly demonstrate that the envelopes, which were marked with the certified mail labels by the process server, were treated as certified mail by the Postal Service (compare, Lopez v New York City Hous. Auth., 149 AD2d 342, 343 [1st Dept 1989]). Accordingly, respondents’ objection to service on that ground is without merit and the motion to dismiss is denied.
Pursuant to General Business Law § 11, service of process on a Sunday is absolutely void:
"11. Serving civil process on Sunday
"All service or execution of legal process, of any kind whatever, on the first day of the week is prohibited, except in criminal proceedings or where service or execution is specifically authorized by statute. Service or execution of any process upon said day except as herein permitted is absolutely void for any and every purpose whatsoever.”
The origins of section 11 of the General Business Law had the secular purpose of providing a general day of rest for the citizens of the State (see, Chase Manhattan Bank v Powell, 111 Misc 2d 1011, 1012).
*240 Respondents’ reliance on authority interpreting CPLR 2103 is misplaced. The definition of the word " 'Mailing’ ” as set forth in CPLR 2103 (f) (1) is specifically limited to CPLR 2103. In the aforementioned cases cited by the respondent the court was called upon to address the application of CPLR 2103 (b) (2) which governs service of process upon an attorney (see, Sport-O-Rama Health & Fitness Ctr. v Centennial Leasing Corp., 100 AD2d, supra, at 585; Vita v Heller, 97 AD2d, supra, at 464). While service upon an attorney is deemed to be complete upon mailing (CPLR 2103 [b] [2]), that is, the deposit of the envelope in the mailbox (CPLR 2103 [f] [1]), that rule has no application to the case at bar since the service of the notice to quit was not upon an attorney. Moreover, the rules of procedure in summary proceedings are governed by an inconsistent statute, RPAPL 735 (see, CPLR 101). Originally, the service of process in summary proceedings was governed by reference to the service of process rules set forth in the CPLR. However, in 1965 the Legislature created a separate regime for the service of process in summary proceedings (L 1965, ch 910, § 7) unrelated to the CPLR (see, RPAPL 735; City of New York v Wall St. Racquet Club, 136 Misc 2d 405).
Quite understandably, there is a dearth of case law directly addressing this issue. In the lone case addressing service of a notice to terminate on a Sunday, the court sustained service: "A notice to terminate a lease is not a court proceeding, but operates merely to terminate a contract. And a contract, which can be made on Sunday, can be terminated on that day as well as on any other. The fact that October 1st was a Sunday is immaterial.” (Pomeranz v More, 187 Misc 383, 385.)
While Pomeranz (supra) is distinguishable from the case at bar, in that it involved compliance with the contractual requirements for the termination of a lease, rather than compliance with the statute, it is instructional insofar as it involved a mailing, rather than personal delivery, substituted service or conspicuous placement service. Respondents’ objection to Sunday service would be more appropriately voiced if the posting of the notice on a conspicuous place at the subject premises had been accomplished on a Sunday after an attempt had been made to effect personal delivery of the notice on a Sunday (cf., Di Perna v Black, 187 Misc 437 [App Term, 1st Dept 1946]; Hessel v Hessel, 6 Misc 2d 861; Cutler v Cutler, 28 Misc 2d 526).
The court does not find that the mere act of placing an envelope in a mailbox is the type of act contemplated by the *241 Legislature’s proscriptions against service of process on Sundays. To void service of process in that instance would do nothing to further the salutary purpose of General Business Law § 11. When Mr. Simon dropped the envelopes in the mailbox he did not infringe on the respondents’, or the general public’s, day of rest which the statute was designed to protect.
While the Appellate Division has moved away from dismissing summary proceedings based on hypertechnical defects (see, Lanz v Lifrieri, 104 AD2d 400 [2d Dept 1984]) the sound practice followed by most practitioners is to serve the notice of petition and petition in accordance with the dictates of RPAPL 735 and to mail them immediately after service, and then to file the papers promptly after service, "often on the same or the following day” (Siegel, NY Prac § 575, at 906 [2d ed]). Petitioner should not be penalized by some hypertechnical interpretation of the law where his process server’s prompt deposit of the mail was clearly designed to allow the mailing to reach the respondents at the earliest possible moment and his diligence does not violate the purpose of the Legislature’s proscription against Sunday service.
The law presumes that a letter properly addressed, stamped and mailed has been duly delivered to the addressee (see, Trusts & Guar. Co. v Barnhardt, 270 NY 350; Nassau Ins. Co. v Murray, 46 NY2d 828). The presumption of receipt is subject to rebuttal by testimony of nonreceipt or proof of inadequate mailing (see, De Feo v Merchant, 115 Misc 2d 286, 289). In the case at bar respondents failed to offer any testimony to rebut the presumption that receipt flowed from the fact of mailing.
The court finds that the 10-day notice to quit was served in the manner prescribed by RPAPL 735. The respondents’ application to dismiss the petition for failure to properly serve the notice to quit is denied.
With respect to the service of the notice of petition and petition, the court finds that Marigo Kangelaris was served by personal delivery and that Petros Kangelaris and the "John Doe” respondent were served by delivery to a person of suitable age and discretion (Marigo Kangelaris) followed by the required certified and first class mailings, all in accordance with RPAPL 735 (1). Respondents’ motion to dismiss the petition for failure to make proper service of the notice of petition and petition is denied.