OPINION OF THE COURT
Michael R. Juviler, J.
This is a decision on a motion to dismiss an indictment. The *753 question treated here is whether a computer program in a "cloned” cellular telephone is a "written instrument” within the meaning of Penal Law § 170.00 (1) and therefore is a "forged instrument” whose possession with intent to defraud is criminal. (See, Penal Law § 170.00 [1], [7]; § 170.10 [1]; § 170.25.)
The question presented is of considerable importance because of the growing use of cloned cellular telephones in illegal enterprises, including trafficking in narcotics (see, Stone, California Appeals Court Holds "Cloned” Cellular Phones Within Law Banning Credit Card Fraud, West’s Legal News, Apr. 4, 1996, at 2785, 1996 WL 259485; Forster, State Legislatures Work to Pin a Number on High-Tech Phone Thieves, West’s Legal News, May 1, 1996, at 3218, 1996 WL 260512); and the widespread use of cloned cellular telephones to avoid paying for calls. According to a prominent police commander, because "cloned cellular phones are not registered to those people using them, investigators are often unable to obtain records such as subscriber information, [and] toll and origination information and it often takes months for officers to trace back calls on a clone phone.” (Forster, ibid.) The director of fraud management for the Cellular Telecommunications Industry Association has noted that this kind of fraud costs the industry "about 1.5 million a day.” (2 Charged in Theft of Cellular Phone Numbers, NY Times, July 3, 1994, at B4.)
The counts involved are counts 3, 4, 5, and 6 of the indictment, which charge attempted criminal possession of a forged instrument in the second degree, the alleged forged instruments being cloned telephones. According to the testimony before the Grand Jury, the defendant, a police officer, was subjected to a Police Department "integrity test” administered by an undercover agent posing as a drug dealer. The defendant agreed to the agent’s request that he act as a bodyguard in the transfer and sale to another purported drug dealer (played by a second undercover agent) of more than four ounces of cocaine and four cloned cellular telephones. The defendant accepted the agent’s offer in exchange for a cut of the proceeds. He assisted the "selling” undercover agent in the transaction and took part in the negotiations with the "buyer.”
A person commits the underlying crime of criminal possession of a forged instrument in the third degree when with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any "forged instrument”. (Penal Law § 170.20.) A "forged instrument” is a *754 defined term meaning a "written instrument which has been falsely made, completed or altered.” (§ 170.00 [7] [emphasis added].) A "written instrument”, in turn, is "any instrument or article, including computer data or a computer program, containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person.” (§ 170.00 [1].)
The lesser crime is aggravated to criminal possession of a forged instrument in the second degree — the crime charged here — if the forged instrument is of a kind specified in section 170.10 of the Penal Law. (Penal Law § 170.25.) This includes a forged instrument that "does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status” (Penal Law § 170.10 [1]).
Determining whether these statutes apply to cloned telephones requires an understanding of some of the technology behind the fraudulent use of cloned phones. Every cellular telephone has a unique electronic serial number (ESN) and a unique mobile identification number (MIN). When in use, the cellular telephone transmits a signal that identifies that telephone’s MIN and ESN. The purposes of the signal are (1) to inform the cellular telephone carrier where the telephone is located, so that the carrier may route transmissions to that telephone, and (2) to identify that telephone for billing. If the MIN and ESN numbers are intercepted, they can be programmed into other cellular telephones — "cloned” phones — to be used by a person who wishes to avoid paying for telephone service or avoid identification in a criminal investigation. (See, People v Pena, 169 Misc 2d 238 [Hayes, J., Sup Ct, Bronx County]; People v Morel, NYLJ, Jan. 22, 1996, at 34 [Smith, J., Westchester County Ct].) This technology in cloned phones was explained in more abbreviated form by an expert witness in the presentation of this case to the Grand Jury.
The issue whether a cloned telephone is a "written instrument” as that term is defined in Penal Law § 170.00 (1) has been addressed in two recent, well-reasoned opinions. (See, People v Pena, supra; People v Morel, supra.) This court finds those opinions persuasive. In combination, they point out that the computer semiconductor chip in a cellular telephone contains encoded computer data. The definition of a written instrument in Penal Law § 170.00 (1), these opinions note, goes *755 beyond, writings on documents; it includes "computer data or a computer program.” That computer program has been "falsely altered,” as that term is used in section 170.00 (6); it has been encoded without the authorization of the rightful owner. Further, both the user and carrier have a "legal interest” in the ESN and MIN codes, because the codes allow the carrier to bill the proper user. Hence, the unauthorized use of those codes "affect[s] a legal * * * interest”. (§ 170.10 [1].) Possession of a forged instrument of the kind that "aifect[s] * * * legal interest[s]”, with knowledge that it is forged and with intent to defraud, deceive or injure another constitutes the crime of criminal possession of a forged instrument in the second degree. (§ 170.25.)
To this analysis in Morel (supra) and Pena (supra) this court respectfully adds the following history of section 170.00 (1) of the Penal Law. When enacted as part of the revised Penal Law effective in 1967, section 170.00 (1) contained its present language, except for the words "including computer data or a computer program,” which were added in 1986. As the Staff Notes of the Commission on the Revision of the Penal Law disclose, the definition of "written instrument” in section 170.00 (1) (in its unamended form) was meant to include "every kind of document and other item deemed susceptible of deceitful use in a 'forgery’ sense, the main requirement being only that it be 'capable of being used to the advantage or disadvantage of some person’.” (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 175.00, at 360, quoted in Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 170.00, at 285 [emphasis added].) This statement of legislative purpose makes clear the broad coverage intended by the drafters of this statute.
To further this policy, section 170.00 (1) of the Penal Law was amended in 1986 by the insertion of the phrase "including computer data or a computer program”. (L 1986, ch 514, § 5, eff Nov. 1, 1986.) This was done in acknowledgment of the "proliferation of computers and the technological advances of recent years [which] have left the State without adequate protection against the many insidious forms of computer crime.” (Governor’s Mem approving L 1986, ch 514, 1986 NY Legis Ann, at 233.) The amendment to include computer data and computer programs was designed to "[fill] the legal void by providing [a] comprehensive statutory framework for responding to the illegal and unethical use of computers.” (Id., at 234.)
*756 One case cited in the Governor’s Memorandum underscores the revision’s broad intent to prevent fraudulent use of computer data in many forms. In that case, a group of computer hackers repeatedly used a commercial electronic message service without paying the required fee; to do so they had to overcome three separate security password codes, a scheme which contributed to the Governor’s finding that the law was "woefully inadequate” to combat the "menacing threat” of computer and computer-related crime in its various forms. If the amendment was designed to cover that kind of scheme, clearly it was meant to cover the present case.*
In sum, the original language and legislative history of section 170.00 (1) • of the Penal Law, the wording of the 1986 amendment, and the accompanying legislative history of that amendment establish that section 170.00 (1) in its present form, incorporated in section 170.25, forbids the duplication of data encoded on the computer chip in a cellular phone, or possession of such a cloned telephone, with intent to defraud.
Accordingly, counts 3, 4, 5, and 6 of the indictment are sustained.

 The recent introduction of a bill that would make it a separate crime to clone a cellular telephone and to possess a cloned telephone does not mean that possession of a cloned telephone with intent to defraud is outside the scope of Penal Law § 170.00 (1) and § 170.25. (See, 1996 NY Senate Bill S 587.)