[860 NYS2d 159]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DON-
ALD ROBINSON, Appellant.

Second Department, June 10, 2008

### APPEARANCES OF COUNSEL

*Lynn W. L. Fahey*, New York City (*William Kastin* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Job-love* and *Morgan J. Dennehy* of counsel), for respondent.

### OPINION OF THE COURT

DICKERSON, J.

We are asked on this appeal first to determine whether the computer source code governing the operation of a breathalyzer machine is subject to disclosure as a written document within the meaning of CPL 240.20 (1) (c) and/or as a document concerning a scientific test or calibration of an instrument utilized to perform a scientific test within the meaning of CPL 240.20 (1) (k). If so, we must then determine whether the People were in possession of the computer source code, and thus obligated to disclose it to the defendant. Finally, we must determine whether the People's inability or failure to provide the computer source code to the defendant in this matter deprived the defendant of a fair trial by undermining his right to challenge the reliability of the particular instrument that police employed to measure the alcohol content of his breath, and consequently calculate his blood alcohol content. Although we hold that the computer source code is indeed a document subject to disclosure, the People were not in possession of it, and thus they could not be compelled to disclose it. In any event, their failure to provide it to the defendant in this case did not deprive him of a fair trial.

The police arrested the defendant on May 13, 2005, after observing him drive through several stop signs and red lights

without stopping. Using a breathalyzer machine known as the Intoxilyzer 5000EN (hereinafter the Intoxilyzer), they calculated his blood alcohol content (hereinafter BAC) to be .196%.

Prior to trial, the defendant moved to compel discovery of the computer source code installed in the particular Intoxilyzer that was used to test him, arguing that such disclosure was necessary to challenge the accuracy of the machine. Source codes are the computer instructions followed by a computing device in processing information (*see People v Cialino*, 14 Misc 3d 999 [2007]). In particular, the defendant claimed that the source code is the program which ran the Intoxilyzer, that it was stored on a removable computer device called an erasable program read only memory (hereinafter EPROM), and that the source code was not publicly available. The defendant further claimed that, without the source code, he was unable to determine how the machine actually operated, and that he would be unable to verify whether there was an error in the computer program that may have led to an inaccurate calculation of his BAC.

The defendant further argued that, pursuant to CPL 240.20 (1), he was entitled to the source code because it constituted a written document relevant to his breath test. He characterized the source code as a "document" stored electronically on the EPROM. The defendant also argued that since computer programs are written documents, the source code was a written report concerning a scientific test within the meaning of CPL 240.20 (1) (k), as it is a computer program which conducts a scientific test.

The defendant also claimed that the People had possession of the source code because it was contained within the machine used to test the defendant and could be taken from that machine by removing the EPROM.

In opposition, the People argued that the source code was not an item subject to discovery pursuant to CPL 240.20, and that, in any event, they had neither direct nor indirect possession of the source code. The People argued that the Intoxilyzer is presumed reliable and that the defendant had not offered any reasonable grounds to show that the Intoxilyzer used to test him had either malfunctioned or might have contained software defects.

The Supreme Court denied the defendant's motion, concluding that: (1) CPL 240.20 (1) did not apply to the source code stored in the internal hardware of a machine, (2) the source

code is not a written report, document, or scientific test within the meaning of CPL 240.20 (1) (k), (3) the Intoxilyzer was presumed reliable and was a generally accepted instrument for determining BAC, and (4) the defendant's right of confrontation would not be compromised by the failure of the People to produce the program.

At trial, the People presented the testimony of Andrew Gilsenan, the police officer who administered the defendant's Intoxilyzer test, as well as the calibration test records for the particular Intoxilyzer on which the defendant was tested. Gilsenan testified that he had received 40 hours of training from the New York State Department of Health with respect to arrests of intoxicated drivers and testing with the Intoxilyzer machine, and that he passed a test qualifying him to administer the Intoxilyzer test. Gilsenan explained that individuals tested by the Intoxilyzer blow into a tube, their breath enters a chamber, and the machine employs light waves to measure breath density within the chamber, thus indicating how much alcohol was in the individual's breath, a measurement from which the defendant's BAC could be calculated.

Gilsenan stated that, in order to use the Intoxilyzer, a checklist of startup procedures, including a calibration test, had to be followed to ensure that the machine was working properly. Additionally, he testified that the police laboratory performed calibration tests on Intoxilyzers every two weeks to make sure they were calibrated correctly. Gilsenan testified that if the machine were accurate, the laboratory issued a certificate of calibration. At trial, Gilsenan was shown inspection records for the particular Intoxilyzer used to test the defendant dated May 3, 2005, and May 25, 2005, and he testified that the reports indicated that the machine had been calibrated correctly on both dates.

Gilsenan testified that on May 13, 2005, he tested the defendant with the Intoxilyzer, that he used the operational checklist to determine whether it was measuring BAC accurately, that the Intoxilyzer performed a series of self-checks, that the machine indicated that it was working properly, and that it measured the defendant's BAC at .196%.

The jury found the defendant guilty of, inter alia, driving while intoxicated per se. The defendant appeals and we affirm.

On appeal, the defendant argues that his motion to compel discovery of the computer source code for the Intoxilyzer was

improperly denied. He claims that CPL 240.20 provides for discovery of the source code, that the source code was in the People's possession and control, and that without the source code, the defense was unable to challenge the reliability and accuracy of the defendant's breath test.

## CPL 240.20 (1) (c)

Pursuant to CPL 240.20 (1) (c), upon a defendant's demand to produce, the prosecution shall disclose:

> "Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the People intend to introduce at trial."

The Court of Appeals has explained that CPL article 240 evinces a legislative intent that a trial "should not be a sporting event," and that "[b]roader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence" (*People v Copicotto*, 50 NY2d 222, 226 [1980]).

Indeed, case law has recognized the defendant's right, in prosecutions charging driving while intoxicated and related offenses, to disclosure of various documents not expressly listed in CPL 240.20 (*see Matter of Constantine v Leto*, 157 AD2d 376, 378 [1990] [records indicating that a machine was not operating properly are discoverable, as are the State Police rules and regulations, the operational checklist, and calibration records]; *People v Crandall*, 228 AD2d 794, 795 [1996] [documents relating to ampoule analysis and simulator solution analysis are subject to disclosure]; *People v Erickson*, 156 AD2d 760, 762 [1989] [breathalyzer operator's permit and the weekly test record are subject to disclosure]; *People v Di Lorenzo*, 134 Misc 2d 1000, 1002-1004 [1987] [several specific documents are subject to disclosure]; *see also People v Alvarez*, 70 NY2d 375, 380 [1987] [defendant may not be denied discovery which prevents him from challenging the reliability and accuracy of a breathalyzer machine]) (*see* Gerstenzang and Sills, Handling the DWI Case in New York § 20:39, at 431 [2007-2008 ed]).

Since a computer source code is a species of "text" that must be written onto a computer chip, and "concerns" scientific tests of the particular machine to which it relates, it is, contrary to the People's contention, a written document within the meaning of CPL 240.20 (1) (c).

## CPL 240.20 (1) (k)

In the prosecution of an offense proscribed by the Vehicle and Traffic Law, CPL 240.20 (1) (k) provides for the disclosure of:

"any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial."

The Practice Commentaries to CPL 240.20 provide, in pertinent part, that:

"The purpose of paragraph (k) is to make it clear that the material described therein is discoverable on demand in prosecution of a Vehicle and Traffic Law misdemeanor. Although reported opinions had not expressed any doubt about the fact that this material generally fell within the ambit of paragraph (c) (see e.g., People v. Briggs, 136 Misc.2d 687, 519 N.Y.S.2d 294 [Town Ct. Monroe Co.] and cases cited therein), the State Magistrates' Association (which requested the legislation) expressed the need for clarification. Apparently, the problem involved the scope of discovery of records of inspection, repair and operation of machines and equipment utilized for scientific tests." (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 240.20, at 342.)

The items specifically listed in CPL 240.20 (1) (k) are not the only items discoverable under this statute. CPL 240.20 (1) (k) expressly states that the listed items are discoverable "in addi-

tion to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States." The enumerated items are consequently mere examples of what must be provided and do not constitute a comprehensive list of all discoverable material. In this regard, the Legislature expressly placed the word "including" immediately prior to listing particular discoverable items in CPL 240.20 (1) (k).

Since the computer source code of the Intoxilyzer constitutes a document "concerning" inspection, repair, and calibration of the relevant machinery, it is included in the definition of discoverable material within this statute.

### Penal Law § 170.00 (1) and § 175.00 (3)

In addition, the Legislature has indicated, by the enactment of Penal Law § 170.00 (1) and § 175.00 (3), that computer data or a computer program is a written instrument in the context of prosecutions for forgery and related offenses (see Penal Law § 170.00 [1] [in forgery prosecutions, " '(w)ritten instrument' means any instrument or article, including computer data or a computer program, containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information"]; Penal Law § 175.00 [3] [same definition for offenses involving false written instruments]; see also People v Versaggi, 83 NY2d 123, 128 [1994] ["the Legislature included 'computer data' and 'computer program' within the definitions of written instruments"]).

Penal Law § 170.00 (1) and § 175.00 (3) have been interpreted broadly, resulting in findings that various objects containing computer data or a computer program constitute written instruments (see People v Owens, 12 Misc 3d 600, 601-602 [2006] [transit MetroCard, which contains computer data, is a written instrument]; People v Grant, 185 Misc 2d 512, 515 [2000] [cable converter box, which contains computer data, is a written instrument]; People v Lawrence, 169 Misc 2d 752, 754-755 [1996] [computer program in cellular telephone is a written instrument]; People v Pena, 169 Misc 2d 366, 371 [1996] ["cellular telephones, which contain the computer chips within them, [are] 'written instruments' "]). Similarly, the computer source code for the Intoxilyzer is a written instrument within the meaning of the Penal Law, a conclusion which supports our interpretation of the CPL.

## The Reliability of the Intoxilyzer

Notwithstanding the foregoing, the defendant's contention that the Supreme Court deprived him of his right to challenge the reliability of the Intoxilyzer used to test him is without merit. The reliability of breathalyzer tests is well-established. Vehicle and Traffic Law § 1194 (4) (c) provides that the New York State Department of Health "shall issue and file rules and regulations approving satisfactory techniques or methods of conducting chemical analyses of a person's blood, urine, breath or saliva." "The legislative intent was to give the [Department of Health] definitive authority to approve tests for determining blood alcohol content for Vehicle and Traffic Law enforcement purposes" (*People v Hampe*, 181 AD2d 238, 241 [1992]).

Although "the scientific reliability of breathalyzers in general is no longer open to question" (*People v Mertz*, 68 NY2d 136, 148 [1986]), the People are required, as a foundational requirement for the admission of breathalyzer test results in a prosecution under Vehicle and Traffic Law § 1192, to introduce the "evidence from which the trier of fact could reasonably conclude, inter alia, that the testing device was in proper working order at the time the test was administered to the defendant" (*People v Freeland*, 68 NY2d 699, 700 [1986]). Furthermore, "other avenues of challenge to the accuracy of the breathalyzer test are available" to a defendant, and a "defendant may not be denied discovery which prevents him [or her] from challenging the reliability and accuracy of the machine" (*People v Alvarez*, 70 NY2d 375, 380 [1987], citing *People v English*, 103 AD2d 979 [1984]). Individual test results may be attacked on the grounds that proper operating procedures were not followed or that the particular machine was not operating properly (*see Matter of Constantine v Leto*, 157 AD2d 376, 379 [1990]; *People v Erickson*, 156 AD2d 760, 763 [1989]; *People v English*, 103 AD2d 979, 980 [1984]), a claim not made by the defendant here.

In this case, the Intoxilyzer, manufactured by CMI, Inc., appears on the list of approved breath-testing instruments compiled by the New York State Department of Health, and the machine is thus presumed reliable (*see* 10 NYCRR 59.4 [b] [4] [xx]; *see also People v Hampe*, 181 AD2d at 241 [expert testimony to establish a foundation for admission of blood alcohol test results is unnecessary where the testing device was accepted by the New York State Department of Health]; *People*

*v Cialino*, 14 Misc 3d at 1001 ["(T)he public policy of this State recognizes that the Intoxilyzer 5000 is a reliable machine, included in the Department of Health schedule, satisfying its criteria for reliability"]). In *People v Cialino* (14 Misc 3d at 1001), the defendant, like the defendant here, moved to compel the People to produce the source code for the particular Intoxilyzer machine used to test him. The court concluded that the defendant had not made any showing that the source code might have caused the machine to measure his BAC inaccurately, holding that "[i]t is incumbent on the defendant to show that a software change has altered the reliability of the machine. Furthermore, this Court will not assist the defendant in his proposed fishing expedition for trade secrets held by a third party. The defendant has not provided the court with a reasonable basis to believe that any software changes and upgrades have caused the Intoxilyzer 5000 used in this case to be unreliable" (*id.*).

Similarly, in this case, the defendant did not provide any evidence that the Intoxilyzer used to test him is unreliable. He did not put forth "some factual predicate" which would make it reasonably likely that the Intoxilyzer's source code contains material, exculpatory evidence unavailable from other sources (*Matter of Constantine v Leto*, 157 AD2d at 378).

The defendant's reliance upon *State v Bjorkland* (case No. 04-CT-14406-SC [Fla, Sarasota County Ct 2005], *cert denied* 924 So 2d 971 [Fla Ct App 2006]) is misplaced. In that case, the defendants argued, inter alia, that they needed the source code to determine whether the Intoxilyzer used to test them had been "substantially modified," and they presented expert testimony and documentary evidence to support their motion to compel discovery (*State v Bjorkland*, case No. 04-CT-14406-SC, *1-2). After examining Florida statutes, including that state's Evidence Code, the court found that the defendants had established, through expert testimony, that the source code was material to their theory of defense (*State v Bjorkland*, case No. 04-CT-14406-SC, *6-7). Here, the defendant failed to present any specific evidence to support his speculative contention that the source code in the Intoxilyzer used to measure his BAC contained "software bugs" and that he needed the source code to challenge its accuracy.

CPL 240.20 (1) (k), however, in addition to entitling a defendant to pretrial disclosure of any written report or document concerning the subject Intoxilyzer test (*see People v Makrinos*,

226 AD2d 479 [1996]), requires disclosure of the most recent record of inspection, calibration, or repair of the machine used and the certificate of the operator (*see* CPL 240.20 [1] [k]; *Matter of Constantine v Leto*, 157 AD2d at 378). Calibration records are essential to the defense to help it determine whether the machine was operating properly, and failure to provide such records to the defendant has been found to warrant reversal (*see People v Corley*, 124 AD2d 390, 391 [1986]; *People v English*, 103 AD2d at 979).

Although a defendant is permitted to challenge the accuracy of the test results generated by a specific machine by showing that the machine was not properly maintained, or that the test was not properly administered (*see People v Corley*, 124 AD2d 390, 390-391 [1986]; *People v English*, 103 AD2d 979, 979-980 [1984]), the defendant here was provided with all of the documentation associated with the Intoxilyzer machine that was used to measure and calculate his BAC, including field inspection reports, the certificate of calibration, and the certificate of analysis for the simulator solution. In addition, the People called the officer who administered the test as a witness, and the defendant was able to cross-examine him regarding his qualifications and the manner in which he conducted the test. Thus, the defendant was able to challenge the accuracy of the Intoxilyzer's determination that his BAC was .196%.

The defendant thus has not argued, and cannot argue, that he was denied the calibration records of the Intoxilyzer used to test him or Gilsenan's certificate qualifying him to operate the Intoxilyzer (*see* CPL 240.20 [1] [k]). Moreover, those documents were admitted into evidence at trial (*see People v Freeland*, 68 NY2d at 700). Thus, the People satisfied the disclosure and evidentiary requirements for proffering the Intoxilyzer's measurement of the defendant's BAC at trial. Since the defendant offered no factual basis to support his contention that the source code in the Intoxilyzer used to test him might have contained software glitches which made its BAC measurements inaccurate, his request to compel disclosure of the source code on that basis constitutes nothing more than a fishing expedition, similar to judicially-thwarted attempts by other defendants to compel disclosure of breathalyzer training manuals, operating manuals, and internal police operating regulations, none of which contained exculpatory evidence unavailable from other sources (*see Mat-*

*ter of Constantine v Leto,* 157 AD2d at 378-379; *People v Di Lorenzo,* 134 Misc 2d 1000, 1003 [1987]).

Moreover, although a source code is a type of "written document" within the meaning of the CPL, the defendant offered no evidence that the People actually had the ability to reduce the source code contained in the relevant EPROM chip to an intelligible written document. The defendant argues that the Intoxilyzer's EPROM chips, which reside in each Intoxilyzer machine, can easily be removed from the machine, and an intelligible version of the source code can be downloaded and reduced to a written document. The defendant, however, did not present evidence which established that the version of the source code that is stored on the Intoxilyzer's EPROMs can be downloaded into an intelligible language which a defense expert could actually read. Moreover, the defendant has not shown that the EPROMs could be removed from the machine without completely dismantling the machine and adversely affecting its future operability. Thus, the defendant's argument is unsupported by any admissible evidence, and we reject it accordingly.

## The People Did Not Possess the Source Codes

The defendant further argues that because the EPROM was in the Intoxilyzer machine used to test him, the source code program stored in the EPROM was in the People's constructive possession since it was in the possession of the police. However, the defendant's argument is unsupported by any persuasive authority.

In general, the People are not required to obtain documents from sources beyond their control, such as those in the possession of a medical examiner or the district attorney of another county (*see* CPL 240.20 [2]; *Matter of Phillips v Ramsey,* 42 AD3d 456, 459 [2007]; *People v Rajigah,* 265 AD2d 580, 581 [1999]; *People v Mayers,* 100 AD2d 558 [1984]).

Here, the People were not required to make available the Intoxilyzer's source code because the People never possessed it, actually or constructively. The People did not have control over the program simply because it was installed in the EPROM (*see Matter of Phillips v Ramsey,* 42 AD3d at 459; *People v Mayers,* 100 AD2d 558 [1984]). The Intoxilyzer source code was not the property of the State, since it was owned and copyrighted by its manufacturer, CMI, Inc., a Kentucky corporation, and is a trade secret of CMI, Inc. (*see Moe v State,* 944 So 2d 1096 [Fla Ct App

2006]; *People v Cialino*, 14 Misc 3d 999, 1000 [2007] [it was "undisputed" that the People did not actually or constructively possess the source code]).

Courts of other jurisdictions have addressed the issue of the actual or constructive possession, by a state prosecutor, of the Intoxilyzer's source code in criminal proceedings. In both *State v Burnell* (2007 WL 241230, 2007 Conn Super LEXIS 157 [2007]), and *State v Walters* (2006 WL 785393, 2006 Conn Super LEXIS 726 [2006]), the court determined that the relevant source code was a trade secret of the manufacturer, was not actually in the state's possession, and was thus not discoverable since Connecticut law requires disclosure only of materials within the "possession, custody or control of any governmental agency" (Conn Gen Stat Ann, Rules Super Ct § 40-11 [a] [2]). The court concluded that "[o]ne cannot give what one does not have" (*State v Burnell*, 2007 WL 241230, *2, 2007 Conn Super LEXIS 157, *5; *see also Moe v State*, 944 So 2d 1096, 1097 [Fla Ct App 2006]; *State v Bjorkland*, case No. 04-CT-14406-SC [Fla, Sarasota County Ct 2005], *cert denied* 924 So 2d 971 [Fla Ct App 2006]; *cf. State v Chun*, 191 NJ 308, 309, 923 A2d 226, 227 [2007] [although state did not have "possession" of source codes, the manufacturer of the breathalyzer machine stipulated to provide the source code, subject to a protective order that assured that it would solely be "utilized by law enforcement personnel in New Jersey" for the purpose of determining whether the software "reliably analyze(s), record(s) and report(s) alcohol breath test results"]).

Where, however, a state enters into a contract with a breathalyzer manufacturer pursuant to which the state obtains a possessory interest in the source codes and other relevant copyrightable material, and concurrently obligates the manufacturer to provide relevant technical information to defense attorneys, that state may make itself subject to statutory disclosure requirements. Since the State of Minnesota entered into such a contract with the manufacturer of the Intoxilyzer, it was obligated to disclose the source codes to a person charged with driving under the influence of alcohol (*see In re Commissioner of Pub. Safety*, 735 NW2d 706, 713 [Minn 2007]).

In the matter before this Court, however, the People do not own or control any portion of the source code, and therefore, unlike the State of Minnesota, never possessed it. The People may thus not be compelled to disclose the source code to the defendant.

## Conclusion

The Supreme Court correctly denied the defendant's motion for discovery of the computer source code for the Intoxilyzer. Accordingly, the judgment appealed from is affirmed.

RITTER, J.P., FLORIO and McCARTHY, JJ., concur.

Ordered that the judgment is affirmed.