OPINION OF THE COURT
Andrew M. Engel, J.
The defendant is charged with aggravated driving while intoxicated, driving while intoxicated; per se, driving while intoxicated and operating a vehicle outside of the restrictions on his license, in violation of Vehicle and Traffic Law §§ 1192 (2-a), (2) and (3) and 530 (6), respectively.
The defendant now moves this court for an order compelling discovery. Specifically, the defendant seeks an order compelling the People to provide him with the following:
“A. For the period of October 15, 2013 to September 15, 2014, any and all documentation, written reports, computer data or records generated of any *747 kind, including, but not limited to, out of service records, concerning periodic operation checks, maintenance checks, calibration checks, field inspections, factory calibrations, or any other test done concerning the Intoxilyzer 5000, Serial Number 68-013839, including, but not limited to, any and all printouts produced from the Intoxilyzer 5000, Serial Number 68-013839, that were generated during calibration checks, including the printouts that are made as a result of the following checks: an invalid sample check, an inhibited RFI check, an invalid test check, an insufficient sample check and an interferent check;
“B. Any and all documents, written reports or records generated concerning the work described in the maintenance log kept for the Serial Number 68-013839, for the period of October 15, 2013 to September 15, 2014;
“C. Any and all documents concerning the preparation and testing of the Simulator Serial Number 3046, Simulator Solution Lot Number 13320, including the forensic method utilized in the production of the simulator solution i.e., standard operating procedures for the production of any and all simulator solutions produced and utilized in the testing of the Defendant’s breath and the actual chromatograms of the head space gas chromatography (not merely the certifications that the tests were performed) for the period of October 15, 2013 to September 15, 2014; and
“D. Any and all other documents generated through the routine maintenance or inspection of the Intoxilyzer 5000, Simulator Serial Number 3046, and Simulator Solution Lot Number 13320, for the period of October 15, 2013 to September 15, 2014.”
At the outset it should be noted that the People’s opposition is not supported by a proper affirmation. CPLR 2106 (a) provides, in pertinent part,
“The statement of an attorney admitted to practice in the courts of the state, . . . when subscribed and affirmed by him to be true under the penalties of perjury, may be served or filed in the action in lieu of and with the same force and effect as an affidavit.”
The People’s opposition consists of what purports to be the af *748 firmation of Everett Witherell, Esq. While stated to be affirmed under the penalties of perjury, the document is not signed by Mr. Witherell. Instead, his name was printed thereon, followed by the initials “CB.” Mr. Witherell having failed to sign this document, it is “of no force or effect (CPLR 2106).” (Matter of American Sec. Ins. Co. v Austin, 110 AD2d 697, 697 [2d Dept 1985]; see also Burgos v Vargas, 33 AD3d 579 [2d Dept 2006]; Matter of Rodriguez v Chassin, 235 AD2d 832 [3d Dept 1997]; MZ Dental, P.C. v Progressive Northeastern Ins. Co., 6 Misc 3d 649 [Suffolk Dist Ct 2004].)
The impropriety of the People’s papers notwithstanding, the court finds the arguments contained therein unpersuasive. While recognizing that the documents the defendant seeks go directly to the calibration, maintenance, repair, testing and operation of the instrument used to test the defendant’s breath, the People take the position that the defendant is only entitled to records pertaining to the defendant’s breath test itself. The People take the position that because the documents sought might only go to “[foundational ma(t)ters] . . . the People do not generally disclose this information.” (Opposition ¶ 8.) The People seem to take the position that the defendant is required to simply accept the People’s conclusory “foundational” paperwork, thereby paving the way for the admission of the test results, without challenge, withholding from the defendant the notes and memoranda created when the simulator solution was created and tested and when the instrument itself was calibrated, maintained, tested and/or repaired. While the People give voice to “[f] airness [being] the ultimate goal of and rationale behind the Criminal Justice System” (opposition ¶ 58), they appear to overlook a bedrock principle of our adversarial system,
“that the best judge of the value of evidence to a defendant’s case is ‘the single-minded devotion of counsel for the accused’ (People v Baghai-Kermani, 84 NY2d 525, 531; People v Flores, 84 NY2d 184, 187; People v Banch, 80 NY2d 610, 615; People v Young, 79 NY2d 365, 371).” (People v DaGata, 86 NY2d 40, 45 [1995].)
The People’s interpretation of CPL 240.20, particularly paragraphs (1) (c) and (k), may here charitably be described as exceedingly narrow. CPL 240.20 (1) (c) provides:
“Except to the extent protected by court order, upon a demand to produce by a defendant against whom an indictment, superior court information, prosecu *749 tor’s information, information, or simplified information charging a misdemeanor is pending, the prosecutor shall disclose to the defendant and make available for inspection, photographing, copying or testing, the following property: . . .
“Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.”
Paragraph (k) of CPL 240.20 (1) explicitly provides, in no uncertain terms:
“in any prosecution commenced in a manner set forth in this subdivision alleging a violation of the vehicle and traffic law, in addition to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States, any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.”
As can readily be seen, the People’s insistence that CPL 240.20 (1) (c) and (k) are limited to discovery of documents relating exclusively to the defendant’s breath test itself is misguided. Focusing on that part of CPL 240.20 (1) (k) which provides for the discovery of documents relating to “a scientific test or experiment,” the People overlook that the statute mandates the People provide, upon demand, “any written report or document, or portion thereof, concerning . . . the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific *750 tests or experiments.” Clearly, the nature of the documents sought by the defendant “concern” the “inspection or calibration or repair” of the instrument used to conduct a “scientific test” upon the defendant’s breath. As the People concede, the proper preparation of the simulator solution and the proper maintenance, repair, calibration and operation of the instrument used to conduct the chemical test of the defendant’s breath being foundational to the admission of the results of that breath test, one cannot separate the two, and the defendant is entitled to the discovery of all written reports and documents concerning both.
In People v Robinson (53 AD3d 63, 67 [2d Dept 2008], lv denied 11 NY3d 857 [2008]) the Court noted that “case law has recognized the defendant’s right, in prosecutions charging driving while intoxicated and related offenses, to disclosure of various documents not expressly listed in CPL 240.20.” The Court specifically referred to cases such as Matter of Constantine v Leto (157 AD2d 376 [3d Dept 1990] [recognizing the discoverability of documents reflecting that a test instrument was not working properly, State Police rules and regulations, checklists and calibration records]), People v Crandall (228 AD2d 794 [3d Dept 1996] [recognizing that documents relating to ampoule analysis and simulator solution should be disclosed pursuant to CPL 240.20 (1) (c)]), People v Di Lorenzo (134 Misc 2d 1000 [Nassau County Ct 1987] [holding that breath test documents such as an operational check list, simulator maintenance log for the unit in question, breathalyzer maintenance log for the unit in question, breathalyzer ampoule records, certificate of calibration and report of analysis of simulator solution were discoverable]), and People v Alvarez (70 NY2d 375 [1987] [noting that a defendant may not be denied discovery which prevents him from challenging the reliability and accuracy of a breathalyzer machine, citing to, inter alia, People v English (103 AD2d 979 [3d Dept 1984]) which, in turn held that the People must provide records relating to the instrument’s calibration test results]). The Robinson (53 AD3d at 69 [2d Dept 2008]) court further stressed, contrary to the minimalist approach to discovery adopted by the People herein, that
“[t]he enumerated items [in CPL 240.20 (1) (k)] are consequently mere examples of what must be provided and do not constitute a comprehensive list of all discoverable material. In this regard, the Legislature expressly placed the word ‘including’ *751 immediately prior to listing particular discoverable items in CPL 240.20 (1) (k).”
Applying these principles to the defendant’s requests herein, the court finds that the defendant’s demand, as set forth in paragraphs 16A-D of his motion papers, are appropriately limited to the “Intoxilyzer 5000, Serial Number 68-013839” (Sachs affirmation, Mar. 30, 2015 ¶¶ 16A, B, D), “Simulator Solution Lot Number 13320” (Sachs affirmation, Mar. 30, 2015 ¶¶ 16C, D) and the “Simulator Serial Number 3046” (Sachs affirmation, Mar. 30, 2015 ¶ 16D), all of which are applicable to this defendant’s chemical breath test. The court finds that these items, as delineated hereinafter, are discoverable, as they are specifically related to
“a . . . scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial” (CPL 240.20 [1] [c]), and to “any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.” (CPL 240.20 [1] [k].)
The defendant is not to be limited to the conclusory reports regarding the maintenance, repair, testing, preparation and calibration of the simulator solution and breath test instrument used in this case, but is entitled to all backup documentation related thereto.
The court does find, however, that the defendant’s demand, seeking such documents for the period of October 15, 2013 to September 15, 2014 is unduly overbroad, seeking documentation which is neither material nor relevant to the issues before this court. While the People are correct in asserting that
*752 “the courts have repeatedly held that the foundation for introducing a breath test in evidence is simply ‘whether the detection instrument was in “proper working order” at the time a test was administered.’ People v Gower, 42 NY2d 117, 120 (1977); see also People v Freeland, 68 NY2d 699, 700 (1986); People v Kinne, 71 NY2d 879, 880 (1988); People v Alvarez, 70 NY2d 375, 380 (1987); People v Mertz, 68 NY2d at 148” (opposition ¶ 59), at the time of trial they routinely offer into evidence records regarding the maintenance, repair and calibration of the Intoxilyzer and simulator on dates both before and after a defendant’s test.
They do so on the, not unreasonable, theory that if the instruments were working properly in the weeks before a defendant’s test, and were working properly in the weeks following a defendant’s test, it is reasonable to conclude they were working properly on the day of a defendant’s test. A defendant, however, should have the opportunity to review the paperwork created at the time these “60-day checks” are conducted, rather than simply being forced to rely on the conclusory statements contained in the records routinely offered by the People. Accordingly, the defendant’s demand for documents relating to the repair, maintenance and calibration of the Intoxilyzer and simulator shall be limited to the period from February 4, 2014 to April 1, 2014, inclusive.
The People’s claim that documentation with regard to the preparation and testing of the simulator solution used in the defendant’s breath test is not in their control is, at best, disingenuous. The People’s position is apparently based upon a letter they received from an Assistant Counsel to the New York State Police, voicing the opinion that the documents in question are not discoverable because they were “not created for or during the testing of any particular defendant, nor by a person whom you intend to call as a witness at trial.” (Opposition ¶ 23.) Counsel, apparently, adopts the same unreasonably restrictive reading of CPL 240.20 as the People, or vice versa.
The People’s position is counter to their previous conduct in this very case. Contrary to their newfound position, the People have provided the defendant with documents of their choosing, which are similar in nature to the documents they now say are beyond their control. Specifically, the People have provided the defendant with a “0.10 Simulator Solution Record” for lot No. 13320, provided by the New York State Police Forensic *753 Investigation Center, approving the simulator solution for use. It is the backup paperwork that allegedly supports the conclusory statement contained in this document which the defendant now seeks.
Clearly, the problem with the People’s production of the documents in question is not that they are in the possession of the New York State Police, but that the People and the New York State Police are intentionally selective in what documents they choose to disclose. Having provided the conclusory documents they wish to offer into evidence at the time of trial, the People need to also provide the documents upon which this conclusion is based, so that the defendant may, where applicable, challenge that conclusion. The court does not find that the disclosure of 60 to 70 additional pages of highly relevant documents to be unduly burdensome.
The People’s position is also contrary to the well-established law regarding the People’s various discovery obligations and the interrelationship between the prosecutor and assisting law enforcement agencies. In numerous situations, the People’s discovery obligation will include the “ ‘constructive’ possession of information known to government officials who ‘engaged in a joint or cooperative investigation’ of the defendant’s case.” (People v Garrett, 23 NY3d 878, 887 [2014] [citations omitted].) As that Court specifically noted, “when police and other government agents investigate or provide information with the goal of prosecuting a defendant, they act as ‘an arm of the prosecution,’ and the knowledge they gather may reasonably be imputed to the prosecutor.” (Id.; see also People v Grant, 16 Misc 3d 1117[A], 2007 NY Slip Op 51456[U] [Essex County Ct 2007] [People ordered to produce all evidence, notes, logs and other documents in possession of New York State Police for forensic examination, analysis and/or testing, pursuant to CPL 240.20 (1) (c)]; People v Wright, 86 NY2d 591 [1995] [exculpatory information in possession of police and not the prosecution is to be disclosed to the defendant]; People v DaGata [FBI notes relating to DNA testing to be turned over to defense counsel pursuant to CPL 240.20]; People v Jackson, 154 Misc 2d 718, 729 [Sup Ct, Kings County 1992] [“all governmental investigatory agencies are arms of the prosecutor. Therefore, one arm of the prosecution team is in possession of and responsible for all the other functioning parts of the team”]; People v Robinson, 53 AD3d 63 [2d Dept 2008], lv denied 11 NY3d 857 [2008] [specifically noting that New York State Police “records indicat *754 ing that a machine was not operating properly are discoverable, as are the State Police rules and regulations, the operational checklist, and calibration records”].)
Accordingly, the defendant’s motion seeking an order compelling discovery is granted; and, it is hereby ordered, that on or before June 16, 2015 the People shall disclose to the defendant and make available for inspection, photographing, copying or testing the following items, if not otherwise provided:
1. All documents, records and reports relating to the preparation of Simulator Solution lot No. 13320, including, but not limited to the applicable chromatograms;
2. All documents, records and reports relating to the testing of Simulator Solution lot No. 13320, between the dates of February 4, 2014 and April 1, 2014, inclusive, including, but not limited to, the applicable chromatograms;
3. All documents, records and reports relating to the repair, maintenance, inspection and/or calibration of the Intoxilyzer 5000, serial No. 68-013839 and Simulator serial No. 3046, between the dates of February 4, 2014 and April 1, 2014, inclusive.