OPINION OF THE COURT
Thomas Rainbow Morse, J.
During the bench trials of Mr. Hernandez and Ms. Merrell this court was called upon to rule on the admissibility of four breath test foundational documents in separate per se DWI cases.[1] One of the documents the court had before it was essentially the same as that used in New York cases for the past 30 years. The other three documents, however, contained new language not yet validated by our courts in any reported decision. These three documents had neither a “pen and ink” signature nor a raised seal over a stamped inscription. Instead, they bore what looked like a twentieth-generation Xerox copy of a signature. Above the signature was a notation that the document was “Digitally signed under ESRA . . . .” For the reasons *210 which follow, each of the three new documents offered by the People has been found inadmissible by the court.[2]
The People have argued that the e-signatures before the court are copies of the electronic signature kept in a computer database at the New York State Police Forensic Investigation Center. They asserted that the “signer” pulls up the electronic signature using a secure personal password after all of the specific calibration or analysis information is inserted in the document. Once the electronic inscription is added to the document, it is complete and its electronically stored information cannot be altered by anyone other than someone with access to the signer’s personal password.[3]
If there had been testimony before the court regarding how the documents were created or if the authenticating certificate contained such information, then the documents might have come closer to admissiblity under CPLR 4518.[4] No such testimony was offered, however, and the purported sworn documents do not contain such information. Instead, these documents are offered at face value in serious criminal matters which, unlike most misdemeanors, could constitute predicate offenses for future felony convictions with all their attendant civil disabilities. Accordingly, this court has chosen to write this decision amplifying the oral ruling rendered at each bench trial to avoid misinterpretation of the court’s finding and in hope that either law enforcement authorities or our legislature will take prompt action to avoid the real possibility of conflicting judicial opinions regarding the new language used in these documents and the e-signatures affixed to them.
The Battle Over Breath Test Foundational Documents
This opinion is simply the latest in a long series of decisions regarding the sufficiency of documents offered in per se DWI *211 cases.[5] While our highest Court has avoided specifying a particular legal lynchpin for admission of breath test results, it long ago noted that the People
“must introduce evidence from which the trier of fact could reasonably conclude...that the testing device was in proper working order at the time the test was administered to the defendant and that the chemicals used in conducting the test were of the proper kind and mixed in the proper proportions.”[6]
In most trials, as in these two cases, the People offer instrument calibration certificates and chemical analysis reports as business records pursuant to CPLR 4518.
Since countless per se DWI trials are held daily, it would be impossible for prosecutors across New York to produce an Albany lab technician in each case.[7] Thus, the People routinely offer the documents without a live witness pursuant to CPLR 4518 (c) which permits such introduction if the calibration or analysis report is accompanied by “a certification or authentication by the head of the . . . [state] laboratory” which performed the tests. Until the recent switch to electronic signatures, prosecutors offered documents containing pen and ink signatures and/or raised seals. They did exactly that when they offered documentation regarding certification of the breath test instrument used in one of these cases.[8]
*212 That document was offered in the Hernandez case and was admitted after the People produced for inspection documents containing original pen and ink signatures.[9] In fact, the authenticating certificate was not only sworn before a notary but bore a raised seal over the assistant lab director’s signature — metaphorically wearing both suspenders and a belt.[10] The words in both the authenticating certificate and the test record to which it refers have been vetted in cases before hundreds of New York trial and appellate judges over the past 30 years. Much of the phrasing in each document was dictated by decisions from the Appellate Divisions and the Court of Appeals. Sadly, the e-signature simulator solution documents in both cases* [11] and the e-signature instrument calibration certificate in *213 the Merrell case[12] do not incorporate many of those substantive elements courts have found necessary for decades. Accordingly, this court finds those three documents are inadmissible under a well-settled line of CPLR 4518 cases.
The documents do not indicate whether either party who e-signed the instrument calibration or chemical analysis document actually did the testing. If neither personally tested the instrument or chemicals, then the documents should at least cite the source of the person’s belief that the test was performed by an identified individual who had a business duty to conduct the test.[13] In addition, since the instrument calibration certificate in the Merrell case indicates repairs were performed by “firmware,” an issue arises as to whether the instrument and the individual who tested it were even in the same room![14]
Although remote testing may be perfectly permissible, if it has been employed then the business record should forthrightly *214 state the human involvement in the testing just as a breath test operator describes the steps he or she performed using the breath test instrument. Our courts have long recognized that “[cjalibration records are essential to the defense to help it determine whether the machine was operating properly, and failure to provide such records to the defendant has been found to warrant reversal.”[15] The syllogistic argument that “the instrument is working properly because the instrument says that it is working properly” does not necessarily instill confidence. Once informed that the test was performed remotely, an attorney could then decide whether to subpoena a witness regarding the test procedure. At the veiy least, the parties would then be in a position to argue any issue presented by the new Internet procedure and courts could begin the process of defining possible parameters for admissibility of Web tests in future cases.[16]
Such judicial guidance is part of a trial judge’s “gatekeeper” role in both civil and criminal cases.[17] In fact, CPLR 4518 (a) provides that a business record may be admitted into evidence “if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”[18] In addition, the “court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record.”[19]
*215 In one of the appellate decisions upholding a judge’s refusal to accept documents offered under CPLR 4518, the Fourth Department noted that the document’s advocate “failed to establish when, how, or by whom the electronic spreadsheet submitted in paper form was made .... [and the proponent] failed to establish that the printed electronic spreadsheet submitted to the court was a true and accurate representation of the electronic record kept by the plaintiff.”[20] As observed by the Court of Appeals 25 years ago,
“While the concept of ‘business’ has ventured far beyond the mercantile origins of this hearsay exception, and records in forms previously unimagined are now routinely received in evidence pursuant to CPLR 4518, still not every record made in business falls within the exception. Courts must surely be sensitive to innovation and not seize on petty irregularities to exclude otherwise trustworthy evidence, but there is also the countervailing interest of fairness to the party against whom the records are admitted, and especially so in a criminal case, where the accused has a constitutional right of confrontation. The particular force of documents which are not subject to cross-examination, and which may be taken into the jury room . . . cannot be ignored. However flexibly or liberally they may be viewed, the purpose and requirements of the statute remain the touchstone.”[21]
The three documents precluded in these cases did not meet this test.
In addition to the concerns raised earlier about the Merrell case calibration report, that document does not disclose “when, how or by whom” the tests were performed. Instead, as set *216 forth fully in footnote 12, the report boldly and rather cryptically asserts that “it has been determined that” the instrument was trustworthy. Such a statement fails to meet the standard used by the Court of Appeals when it affirmed invalidation of a lab report which “did not contain the signature of any person expressly identified as the tester” despite the fact that the Court of Appeals found it was “likely” that the person who signed the ballistics report had tested the gun.[22] As to whether the documents used to show the chemicals were of the proper kind and mixture, the papers also do not identify “the individuals who conducted the tests”[23] — an element found necessary by the Court of Appeals.
Moreover, the reports (which are reproduced verbatim in footnote 11) are incomplete. They indicate the purpose of the testing was to show each liquid was “tested [by a process] to contain the appropriate concentration of ethyl alcohol and is hereby approved for use.” Presumably, whoever performed the test meant to write that the solution was “tested . . . and was found to contain the appropriate concentration of ethyl alcohol.” Thus, both documents contain a serious omission which preclude this court from holding that the electronic records are reliable reports of the “findings” of whoever it was that actually tested the liquids.
While government documents are to be accorded a presumption of regularity, there is nothing regular about the content of the three documents denied admission. Change does not necessarily mean progress and, in these cases, the unexplained decision to abandon judicially approved wording in these documents *217 may well constitute several steps backwards in the prosecution of per se DWI cases.
The Use of E-Signatures on Foundational DWI Documents
Just before the turn of the millennium, our legislature recognized that we had entered a new era in the public and private sectors “relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.”[24] The statutory framework and legislative history of these laws illustrate that its main focus was on commercial and public record applications.[25] To that end, in 2002, the legislature diluted the definition of “electronic signature” to facilitate commerce and provide symmetry with federal law.[26] The State Office for Technology made it clear, however, that nothing “requires any person to use a document bearing an electronic signature [and] the use or acceptance of electronic records by governmental entities is voluntary.”[27] While it would appear that the State Police and District Attorney’s Office have voluntarily chosen to use electronic signatures and records in these cases, it is also apparent that the defendants and their attorneys have not consented. Perhaps because the laws were designed to be used primarily in commercial settings, the legislation does not address the issue of whether a criminal defendant’s assent is required.[28] As suggested later in this opinion, any lingering *218 question regarding voluntary use of such records and signatures could be easily resolved by legislative action.
As a separate issue, the court has concerns about the quality of the reproduced signature. Although the People contend it is an original, it bears a greater resemblance to a copy of the copy of the electronic record kept in a state computer. When compared to the rest of the computer-generated documents, the e-signatures of the forensic supervisor are so indistinct as to be unreadable. Even though the rules of evidence allow for admission of copies under CPLR 4539 (b), the authenticating certificates before the court fail to pass the statutory test requiring them to set forth “the manner or method by which tampering or degradation of the reproduction is prevented.”[29]
In the alternative, any question regarding whether the authenticating certificate was an original could have been cured if the person putting it in an envelope had simply taken the extra seconds necessary to place a CPLR 4540 (1) raised seal over the e-signature.[30] Since such seals are required for copies of other original official records which must remain in government hands, and such sealed documents have been used in per se DWI cases for decades, it is difficult to imagine the justification for not using such a seal on three of the four documents in these cases while courts sort out the use of electronic signatures in criminal cases.
A Suggested Legislative Solution
While three of the newly minted e-signature documents offered in these cases were denied admission, such a result need *219 not be replicated in the future if the instrument and chemical testing processes and the documents offered regarding them are consistent with the time-tested common-law and statutory rules of evidence described earlier in this opinion. Notwithstanding the adage that “if it ain’t broke . . . don’t fix it,” this court sees no reason why properly drafted e-records and e-signatures should not be admissible in criminal cases.
In 2010, the Office of Court Administration advocated for such legislative action regarding the use of electronically crafted documents and e-signatures in all criminal cases. That bill never reached the legislative floor.[31] Whether or not such general criminal procedure changes are made, this court respectfully suggests that advances in secure document creation and encrypted record retention as well as the orderly administration of justice in these per se DWI cases critical to highway safety dictate that Vehicle and Traffic Law § 1195 be amended to specifically outline the rules of evidence applicable to electronic foundational documents commonly used in these cases.[32]
As noted by our Court of Appeals, legislative enactments since the 1980s have created “a tightly and carefully integrated statute the sole purpose of which is to address drunk driving.”[33] Consistent with those efforts, an amended Vehicle and Traffic Law § 1195[34] might read as follows:

“2. In any proceeding under this article, the court may allow admission of copies of records created in and, kept in the regular and ordinary course of business consistent with the provisions of Article 45 of the Civil Practice Law and Rules. Such documents, including electronic copies, may be admissible provided:

“(a) The authenticating certificate produced pursuant to CPLR 4518(c) indicates that the governmental entity has employed procedures and controls de
*220
signed to ensure the authenticity, integrity, and security of the records; and

“(b) The test report clearly indicates the name of the individual who performed the test and, if more than one individual was involved in the testing, the role played by each; and

“(c) If the test was accomplished remotely, the report must be signed by testing personnel at both ends of the transmission and must clearly state the role undertaken by each person in such testing.

“3. The use of the term ‘Electronic’ under this article shall mean of or relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities. Documents offered under this article which may have originally been paperless may:

“(a) Consist of an ‘electronic record’ containing information, evidencing any act, transaction, occurrence, event, or other activity, produced or stored by electronic means and capable of being accurately reproduced in forms perceptible by human sensory capabilities; and

“(b) Contain an ‘electronic signature’ which is a handwritten signature which is stored digitally as a digital or electronic symbol, which is attached to or logically associated with an electronic record which has been completed except for the addition of such electronic signature and which was executed or adopted by a person with the intent to sign the record and which must be unique to the person using it, capable of verification, under the sole control of the person using it, attached to or associated with data in such a manner that authenticates the attachment of the signature to particular data and the integrity of the data transmitted, and intended by the party using it to have the same force and effect as the use of a signature affixed by hand.”

While lawyers are trained to argue by analogy, there is no reason to continue to do so in these cases. Statutory evidentiary rules specifically designed to address issues relating to foundational documents in per se DWI cases are overdue and would al *221 low for a more focused approach to evidentiary arguments unfettered by case law more suited to commercial transactions.[35]
Conclusion
Our laws should be flexible enough to account for technological innovations which foster fiscal responsibility, greater accountability and increased availability. The use of electronic records relating to calibration of breath testing instruments and the chemicals they use provides a cost effective and environmentally sensitive alternative to shuffling and storing paper records. In addition, an Internet library containing read-only copies of such documents made available to prosecutors and defense counsel would expedite discovery and might facilitate plea negotiations.
Hopefully, the appropriate officials will swiftly undertake the steps necessary to realize these benefits and address the deficiencies in the electronic foundational documents outlined above. Transparency is unquestionably a component of constitutionally compelled public trials since “the trial of a criminal charge should not be a sporting event where each side remains ignorant of facts in the hands of the adversary until events unfold at trial.”[36] With appropriate authentication and attribution, electronic records and signatures can further the goal of a fair trial and a return to time-tested language in foundational documents will allow all parties to concentrate on substance rather than process in these important cases.

. Per se DWI is a term used when referring to Vehicle and Traffic Law § 1192 (2). While the court granted a trial order of dismissal on that count, each defendant was found to have committed the separate crime of driving while intoxicated.

. While the People were afforded an opportunity to subpoena witnesses to testify about these documents, they chose not to do so. Instead, they outlined the procedure upon information and belief based on information provided by state personnel.

. Such a process answers the concerns raised by this court in People v Rose, 11 Misc 3d 200 (Rochester City Ct 2005, Morse, J.).

. CPL 60.10 directs that “[u]nless otherwise provided by statute or by judicially established rules of evidence applicable to criminal cases, the rules of evidence applicable to civil cases are, where appropriate, also applicable to criminal proceedings.” As set forth later, case law has suggested that courts be more circumspect with business records offered in criminal cases under CPLR 4518. See People v Kennedy, 68 NY2d 569 (1986).

. See People v Donaldson, 36 AD2d 37 (4th Dept 1971); People v Gower, 42 NY2d 117 (1977); People v Farrell, 58 NY2d 637 (1982); People v Mertz, 68 NY2d 136 (1986); People v Freeland, 68 NY2d 699 (1986); People v Garneau, 120 AD2d 112 (4th Dept 1986); People v Kinne, 71 NY2d 879 (1988); People v Yocher, 197 AD2d 890 (4th Dept 1993); People v Dailey, 260 AD2d 81 (4th Dept 1999); People v Boscic, 15 NY3d 494, 497 (2010). In our trial courts, these cases spawned dozens of disparate reported opinions and hundreds of mixed unreported decisions while nuances were refined through the crucible of appellate jurisprudence.

. People v Freeland, 68 NY2d 699, 700 (1986) (citations omitted); see also People v Boscic, 15 NY3d 494, 497 (2010) (rejecting a rigid six-month rule for breath test instrument calibration).

. Under CPLR 4518 (a) a live witness provides the foundational elements of the document offered.

. Since the exact wording of the lab technicians report is important, it reads as follows:
“I hereby certify that I have performed any necessary maintenance procedures and calibrated NATIONAL PATENT ANALYTICAL SYS breath test instrument model DATA MASTER, serial number 960151, and have determined that it is accurate and reliable for the determination of ethyl alcohol in the blood by analysis of the breath. The instrument results are recorded above and *212 the instrument satisfies all limits and standards established by the New York State Commissioner of Health as enumerated in Part 59, Subchapter D of Chapter II, TITLE 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York, (10 NYCRR Part 59) as amended.
“I further certify that the entries made in these records of inspection/maintenance/calibration were made at the time that such inspection/maintenance/calibration of the above identified breath test instrument was performed, or within a reasonable time thereafter.”

. The court actually received a copy of the original since the People need to retain the original for production in other DWI cases. Compare People v Roach, 226 AD2d 55, 60 (4th Dept 1996) (“modern business practice is to make photographic reproductions in the regular course of business and . . . photographic reproductions so made are sufficiently trustworthy to be treated as originals for the purpose of the best evidence rule”).

. This portion of the court’s opinion, however, does not focus on the authenticating certificate.

. The simulator solution record in the Merrell case was signed by a forensic scientist II and supervisor of forensic services. Without noting which, if either, did the testing or made the findings, the document states “Analysis Results: 0.120g/dL” and contained the following assertion: “Simulator solution lot number 10110 has been tested by head space gas chromatography [szc] to contain the appropriate concentration of ethyl alcohol and is hereby approved for use.” Presumably where the court has inserted “[sic]” the drafter meant to have inserted the words “and has been found.” No such words, however, are in the document. The record continues — “When this simulator solution is used with a properly operating breath testing instrument, it will provide a value of 0.10% within acceptable limits.”
The reference gas (simulator solution?) record in the Hernandez matter was signed by the same two individuals again without noting which, if either, did the testing or made the findings. This document states “Analysis Result: 0.100 g/210L.” The record then went on to assert that
“[Reference gas lot number 672708 has been tested by infrared and electrochemical testing [sic] to contain the appropriate concentration of ethyl alcohol and is hereby approved for use. *213 When this reference gas is used with a properly operating breath testing instrument, it will provide a value of 0.10% within acceptable limits.”
As noted above in connection with the document in the companion case, the court has inserted “[stc]” to denote the absence of words which the use of proper syntax might require.
Since the documents were offered in different cases, there was no occasion for inquiry as to why one refers to simulator solution and the other reference gas or why the measure in one was “g/dL” and the other “g/210L.” Since the liquids were manufactured by different companies, the testing specifications may simply be due to different size containers. This variance had no bearing on the court’s decision in either case, but it does present another interesting question about the completeness of the certification.

. The instrument calibration record in the Merrell case stated that “[t]he above referenced instrument was calibrated and had any necessary maintenance procedures performed. Based on the calibration, it has been determined that the instrument is accurate and reliable for the determination of ethyl alcohol in the blood by analysis of the breath. The calibration verification results recorded above are within the limits established by the Commissioner of Health, as outlined in the official Compilation of Codes, Rules and Regulations of the State of New York, Title 10, Chapter II, Subchapter D, Part 59. The entries made in this calibration record were made at the time of each event recorded, or within a reasonable time thereafter.”

. See CPLR 3021. It is clear that the requirement that the source of the belief doctrine applies to criminal cases as well. People v Shippers, 123 AD2d 502, 503 (4th Dept 1986).

. That calibration report contains two e-signatures, one from a state trooper and the other belonging to a forensic scientist III, without explanation as to the role played by either individual. Reading between the lines, remote biweekly calibration checks may have been used for some time. See People v Robinson, 53 AD3d 63, 66 (2d Dept 2008).

. People v Robinson, 53 AD3d 63, 72 (2008), lv denied 11 NY3d 857 (2008) (citations omitted); see also People v Corley, 124 AD2d 390, 391 (1986); People v English, 103 AD2d 979 (1984).

. If the instrument certifies itself without “hands on” human testing, the issue of independent examination may arise. Moreover, such an “instrument only” certification procedure may highlight concerns causing courts to revisit a recent ruling denying pretrial access to “the computer instructions followed by a computing device in processing information.” People v Robinson, 53 AD3d 63, 65 (2008), lv denied 11 NY3d 857 (2008).

. As noted by one court the “Trial Judge’s role as a gatekeeper of evidence is . . .an inherent power of all trial court Judges to keep unreliable evidence (‘junk science’) away from the trier of fact regardless of the qualifications of the expert.” Clemente v Blumenberg, 183 Misc 2d 923, 932 (Sup Ct, Richmond County 1999, Maltese, J.) (citations omitted).

. CPLR 4518 (a) (emphasis added). As to an “electronic record ... a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record.” Id.

. CPLR 4518 (a) (emphasis added). Since this judicial oversight responsibility is the most recent addition to this section and was placed before the admonition that “[a] 11 other circumstances of the making of the *215 memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility,” it is clear that those factors go to foundation not weight.

. Palisades Collection, LLC v Kedik, 67 AD3d 1329, 1331 (4th Dept 2009); see also Afridi v Glen Oaks Vil. Owners, Inc., 49 AD3d 571, 572 (2d Dept 2008) (the report didn’t contain details regarding “how the temperature measurement was made”; furthermore, “the mere fact that the report may have been a business record, as contemplated under CPLR 4518, ‘does not overcome any other exclusionary rule which might properly be invoked’ ”); People v Tortorice, 142 AD2d 916, 918 (3d Dept 1988).

. People v Kennedy, 68 NY2d 569, 578-579 (1986) (citations omitted). Citation to this case should not suggest that this court holds DWI foundational documents are “testimonial” since some years ago it held they are not. People v Fisher, 9 Misc 3d 1121(A), 2005 NY Slip Op 51726(U) (Rochester City Ct 2005, Morse, J.).

. Matter of Rodney J., 83 NY2d 503, 505-507 (1994); compare Matter of Wesley M., 83 NY2d 898, 900 (1994) (although the chemist’s lab report certified the authenticity of the copy of the report, he “did not actually attest to any personal knowledge regarding the substance seized”), with Matter of Deshone C., 207 AD2d 756, 758 (1st Dept 1994), lv denied 85 NY2d 801 (1995) (the chemist’s verification indicated “I hereby certify the foregoing report is a true and full copy of the original report made by me” and, thus, the First Department found the case was distinguishable from Wesley M.).

. People v Farrell, 58 NY2d 637, 639 (1982). Way back in 1977, after reversing a DWI conviction, the Court of Appeals outlined what the State should do in People v Gower, 42 NY2d 117, 121 (1977):
“It would seem that the requirements of CPLR 4518 could very easily be met and thus its benefits be realized by the prosecution. If the testing agency or corporation were to establish a standardized testing procedure which included a requirement that there be a contemporaneous record made {with appropriate entries as to date, individual making the test, material tested, tests conducted, and results).” (Emphasis added.)

. State Technology Law § 302 (1). This landmark state law predated federal legislation in this area. See Electronic Signatures in Global and National Commerce Act, 15 USC §§ 7001-7006, as added by Pub L 106-229, 114 US Stat 464.

. See e.g. State Technology Law § 304 (2); § 305 (3).

. L 2002, ch 314, § 1 (“Legislative intent”); State Technology Law § 302 (3). Before the change, the definition of such an electronic signature included the language suggested in this opinion for a new Vehicle and Traffic Law § 1195 (3) (b).

. Rules of the Office for Technology (9 NYCRR) § 540.1 (d); see also 9 NYCRR 540.1 (b) (the legislation is to “ensure that persons who voluntarily elect to use electronic signatures” [emphasis added]); 9 NYCRR 540.1 (e) (“Neither ESRA, nor this Part, shall in whole, or in part, be construed to limit any legal rights or privileges, contractual or otherwise, that parties may have in the use of electronic signatures and records”); see also State Technology Law § 309 (1) (“Nothing in this article shall require any entity or person to use an electronic record or an electronic signature unless otherwise provided by law”); compare 15 USC § 7001 (b) (2) (which provides that under federal law individuals need “agree to use or accept electronic records or electronic signatures”).

. People v Manges, 67 AD3d 1328 (4th Dept 2009) (witness’s lack of personal knowledge and absence of bank computer security should have *218 precluded admission of electronic record under CPLR 4518); cf. People v Switzer, 55 AD3d 1394 (4th Dept 2008) (the officer was familiar with the process used to generate the records, relied on and had access to the otheragency’s records).

. CPLR 4539 (b); see State Technology Law § 306 (“In any legal proceeding where the provisions of the civil practice law and rules are applicable, an electronic record or electronic signature may be admitted into evidence pursuant to the provisions of article forty-five of the civil practice law and rules including, but not limited to section four thousand five hundred thirty-nine of such law and rules”).

. CPLR 4540 (1). Those authenticating certificates were prepared in November of 2009 and February 2010 sans seal even though someone at the Department of Criminal Justice Services Public Safety Laboratory placed a raised seal over the signature on the authenticating certificate in the Hernandez case signed in that lab in July 2010.

. 2010 OCA Bill No. 74.

. The legislative committee process could ensure that stakeholders including the general public, those representing prosecutors, defense counsel, the executive and judicial branches of government and others concerned with alcohol- and drug-related driving laws would have a forum for their views on such a law Compare the provisions of the State Technology Law relating to the responsibilities of the electronic facilitator, State Technology Law §§ 303 and 305, with those required of that individual under 9 NYCRR 540.1 (1) (c).

. People v Prescott, 95 NY2d 655, 659 (2001).

. Subdivisions (2) and (3) would be renumbered subdivisions (5) and (6).

. While the weight of authority in this state and across the country would seem to indicate that these foundational documents are not “testimonial” as that term is used in right to confrontation cases, it would also provide a framework for the courts to once and for all decide the issue.

. People v Copicotto, 50 NY2d 222, 226 (1980).