[990 NYS2d 403]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JAMES WHITE, Defendant.

Criminal Court of the City of New York, New York County, June 30, 2014

APPEARANCES OF COUNSEL

*Law Offices of Adam Perlmutter, P.C. (Daniel McGuinness* of counsel) for defendant.

*Cyrus R. Vance, Jr.*, District Attorney (*Laura Richenderfer* of counsel), for plaintiff.

OPINION OF THE COURT

MELISSA CRANE, J.

This case calls upon this court to interpret the parameters of CPL 240.20 (1) (k), a statute that addresses the People's discovery obligations in driving while intoxicated (DWI) per se cases (Vehicle and Traffic Law § 1192 [2]). For the following reasons, the court holds that the People must produce the record of calibration that is closest in time to defendant's discovery demand, if they have not already done so. The People need not produce the maintenance logs or the gas headspace chromatography reports.

Background

The police arrested defendant for driving while intoxicated on January 28, 2013. Defendant took a breath test on an Intoxilyzer 5000EN. The New York City Police Department (NYPD) maintains this machine. Defendant registered a .16 of one per centum by weight of alcohol in his blood. A reading of .08 is the floor in New York for driving while intoxicated per se. The People therefore charged defendant with that crime (Vehicle and Traffic Law § 1192 [2]), along with operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [3]), and operating a motor vehicle while impaired by alcohol (Vehicle and Traffic Law § 1192 [1]).

Given the charge of Vehicle and Traffic Law § 1192 (2), defendant reasonably expects the People will seek to admit the results of the breathalyzer test as evidence of guilt at trial. Breath alcohol detection machines are becoming increasingly reliable as the technology improves (*see People v Boscic*, 15 NY3d 494, 499 [2010]). However, admissibility of breath test results still requires the People to demonstrate that the machine was in good working order (*People v Boscic*, 15 NY3d 494, 500 [2010]), that any chemicals used in conducting the test were of the proper kind and mixed in the proper proportions (*People v*

*Freeland*, 68 NY2d 699, 700 [1986]), and that the test was administered properly (*People v Murphy*, 101 AD3d 1177, 1178 [3d Dept 2012]).

To establish that the machine was in proper working order, the People usually seek to introduce a calibration certificate at trial, along with field tests from before and after the arrest, the certificate of the operator of the field test, and simulator solution records or the intoxilyzer printout (*see People v Hernandez*, 31 Misc 3d 208, 211 [Rochester City Ct 2011]). The People usually produce these documents well in advance of trial, and have apparently done so in this case (brief for defendant at 14 ["(t)he prosecution has produced the field unit inspection documents for before and after the defendant's tests, but only the calibration check prior to the defendant's (breath test) not after"]). The People contend that, with the production of these documents, they have fulfilled their discovery obligations.

Defendant, however, seeks more in an effort to bolster his defense that the machine was not working properly at the time of his test. Specifically, defendant seeks the following documents:

• All field inspection check documents conducted in the interval between the full calibration check performed immediately prior to the defendant's test, and immediately after defendant's test, including but not limited to:

• The field inspection calibration check printout

• The field inspection check internal diagnostic check printout

• The Police Field Unit Inspection Report

• The full calibration test conducted immediately prior to *and immediately after* the defendant's test, including but not limited to:

• The full calibration test diagnostic test printout

• The calibration test printout

• The insufficient sample test printout

• The radio frequency interference test printout

• Police Laboratory Calibration Report

- The invalid sample test
- The interferent test printout
- The invalid test printout; and
- The maintenance log for the Intoxilyzer that tested defendant's breath.

The court understands from arguments in motions in other cases here that defendant seeks the gas headspace chromatography reports for the simulator solution used in connection with defendant's test as well.

### Field Test Documents

The NYPD conducts field tests of all Intoxilyzers on a regular basis. A field inspection check consists of an internal diagnostic check, a breath tube heater check, a printer check and three calibration tests (*see* affirmation of Daniel A. McGuinness, Esq., in support of defendant's motion to compel discovery, Oct. 7, 2013 at 3, ¶ 10).

### Calibration Test Documents

The field inspection report includes a "calibration check" report. This report differs from the "full calibration" in that a "calibration check" verifies the Intoxilyzer reading at a single point in value (apparently .10), while the full calibration adjusts the Intoxilyzer via the reading of multiple solutions (*see* brief for defendant, Apr. 24, 2014, at 13). Although the People have produced the full calibration documents preceding defendant's test, defendant seeks discovery of the full calibration documents from *after* defendant's test.

The People vigorously contest that they have a discovery obligation to produce the subsequent full calibration. They contend the NYPD customarily performs the full calibration only once or twice a year and, therefore, the court would be requiring the People to produce a document that may not even exist. Indeed, there is no requirement for anyone to calibrate the machines at particular intervals (*see People v Boscic*, 15 NY3d 494, 500 [2010]). Defendant contends that the full calibration records from after defendant's arrest are critical to know whether important functions operated properly in the interim since the last calibration. For example, the defense contends that "if the defendant in the present case had chemicals from work still on his person, and the interferent detector was not working properly, it would not be detected until the next calibration test" (*see* brief for defendant, Apr. 24, 2014, at 14).

The Maintenance Logs

Defendant contends that he is entitled to the maintenance logs on the grounds it is necessary to his investigation into whether the machine in question is reliable and accurate. Defendant claims "recurring malfunctions and any attendant repairs, including adjustments, would be recorded on the maintenance log" (*see* brief for defendant, Apr. 24, 2014, at 13). However, defendant points to no reason in this case to suspect that the machine was placed out of service or underwent repair during the period for which defendant requests maintenance logs.

Gas Headspace Chromatography

Defendant seeks any and all gas headspace chromatography reports for the simulator solution used in connection with defendant's test. Before a simulator solution can be a reference on an Intoxilyzer 5000EN machine, the solution is tested to assure it contains the appropriate concentrations of ethyl alcohol. The gas headspace chromatography (GC) tests the simulator solution. The GC analysis creates printouts and the technician writes a report based on these printouts. The report confirms that the analysis was performed and states the results. The People routinely turn over the certificate of the simulator solution, but not the GC.

Analysis

Unlike discovery in a civil case, discovery in a criminal case in New York State depends entirely upon statute (*People v Colavito*, 87 NY2d 423, 427 [1996]). Courts "may not grant discovery applications in criminal actions for which there is no statutory basis" (*Matter of Pirro v LaCava*, 230 AD2d 909, 910 [2d Dept 1996]). "The purpose of pre-trial discovery is to allow the defendant to prepare for trial and avoid trial by ambush" (*People v Irons*, 20 Misc 3d 1127[A], 2008 NY Slip Op 51644[U], *3 [Crim Ct, Kings County 2008] [internal quotation marks omitted], citing *People v Robinson*, 53 AD3d 63, 67 [2d Dept 2008]). Courts are to construe these discovery statutes strictly (*People v Beauchamp*, 126 Misc 2d 754, 755 [Sup Ct, Bronx County 1985]).

The statutory authority governing discovery in DWI cases is CPL 240.20 (1) (k):

> "[I]n any prosecution commenced in a manner set forth in this subdivision alleging a violation of the vehicle and traffic law, in addition to any material required to be disclosed pursuant to this article, any

other provision of law, or the constitution of this state or of the United States, any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including *the most recent record* of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial." (Emphasis added.)

CPL 240.80 governs the timing of discovery. It states that "[a] demand to produce shall be made within thirty days after arraignment" as long as defendant had legal representation at the arraignment. (CPL 240.80 [1].)

The People argue that items CPL 240.20 (1) (k) does not specifically enumerate are not discoverable because "where no statutory right of discovery is provided, no substantive right of discovery exists." (People's response ¶ 4.) The legislative history from CPL 240.20 (1) (k) supports the People's position. The New York State Magistrates Association proposed the legislation in 1988. That organization's sponsoring memorandum stated that the purpose of the bill was "[t]o include as a matter of law, as part of discovery, records relating to the inspection, repair and operation of machines and equipment, with the results to be used in the prosecution's case" (Mem in Support, Bill Jacket, L 1989, ch 536 at 7; brief for defendant, exhibit E). Apparently, the legislature adopted this section because many courts were not granting discovery of items like calibration reports without express statutory mandate (*see* Peter Preiser, 2002 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 240.20 at 342; *see also People v English*, 103 AD2d 979, 980 [3d Dept 1984] [reversing trial court that had denied defendant discovery of any calibration reports]).

Nevertheless, the list from CPL 240.20 (1) (k) is not exclusive. In *People v Robinson* (53 AD3d 63, 68 [2d Dept 2008], *lv denied* 11 NY3d 857 [2008]), the defendant sought the computer source code from the Intoxilyzer 5000 used to test the defendant. In deciding that the source code was a discoverable item, the Appellate Division, Second Department held that

"[t]he items specifically listed in CPL 240.20 (1) (k) are not the only items discoverable under this statute. . . . The enumerated items are consequently mere examples of what must be provided and do not constitute a comprehensive list of all discoverable material. In this regard, the Legislature expressly placed the word 'including' immediately prior to listing particular discoverable items in CPL 240.20 (1) (k)." (*Id.* at 68-69.)

Defendant seizes on this language to contend that 240.20 (1) (k) entitles him to all the documents he requests beyond what the People have already produced. A further examination of the case law and relevant statutory sections demonstrates that each side is a little bit right and a little bit wrong.

Calibration Reports

A plain reading of CPL 240.20 (1) (k) requires production of "the most recent" record of calibration. "Most recent" means what it literally says. There is nothing in the statute to support the People's construction that the statute only requires the calibration report that predates defendant's arrest. Nonetheless, pursuant to CPL 240.80, defendant still must have made the demand for the calibration reports within 30 days of arraignment. Accordingly, the court orders the People to produce the most recent calibration report predating defendant's arrest and up to 30 days thereafter. The statute does not impose a continuing obligation on the People to produce reports after that time.

Maintenance Records

Unless the most recent maintenance records contain *Brady* material, the People do not need to produce them. Maintenance records do not always contain repair information and therefore are not necessarily "records of repair" falling within the list of specific items that CPL 240.20 (1) (k) delineates. Defendant argues that maintenance records are discoverable in the first instance because *People v Robinson* held that CPL 240.20 (1) (k) does not contain an exclusive list (*see* discussion, *supra*). However, in *Robinson*, defendant was not entitled to discovery of the source code, despite it being discoverable under 240.20 (1) (k), without some "factual basis to support his contention that the source code in the Intoxilyzer used to test him might have contained software glitches which made its BAC measurements inaccurate" (53 AD3d at 72). Indeed, without that factual basis, the *Robinson* Court considered defendant's request to

compel disclosure of the source code to be "nothing more than a fishing expedition" (*id.*). Defendant contends that this discussion refers to the court's subpoena power and not defendant's broader rights under CPL 240.20 (*see* letter from Daniel A. McGuinness, Esq., June 18, 2014, at 2).

Defendant reads too much into *Robinson*. That case was entirely in the context of a motion to compel under CPL 240.20. There is no mention of the court's subpoena power. The *Robinson* Court dealt first with the issue of whether the source code was a discoverable item. It did this for a good reason. Had the source code not been within the ambit of 240.20, the Court could have ended its discussion. After deciding the source code was indeed discoverable generally, the Court then moved on to decide whether production of the source code was warranted in the case before it. In deciding that the defendant was engaged in a fishing expedition, the *Robinson* Court distinguished the items that 240.20 (1) (k) specifically delineates as those the prosecution needs for foundational purposes. It held that by providing those items the People had satisfied *both* their "disclosure and evidentiary" requirements (53 AD3d at 72).

Accordingly, in order to obtain maintenance records in this case, defendant needs some factual showing that the documents in question contain information that casts doubt on the reliability of the Intoxilyzer. Because defendant has not made this showing, defendant is not entitled to the maintenance records. However, the People have a continuing *Brady* obligation to conduct an actual investigation into whether any information exists indicating that the chemical test device was not operating properly, and to disclose any of this information to the defense (*see People v Ariosa*, 172 Misc 2d 312, 315-316 [Monroe County Ct 1997]). This duty includes review of the most recent maintenance records to see if they contain repair information.

Gas Headspace Chromatography

Defendant does not explain why the gas headspace chromatography reports add anything above and beyond the simulator solution report the People routinely provide. Indeed, the gas headspace chromatography reports the defense seeks appear to be nothing more than tests of tests and are not a fundamental part of whether or not the machine was in good working order (*see State v Chun*, 194 NJ 54, 136, 943 A2d 114, 163 [2008] [refusing to order production of "tests of tests"]). Accordingly, the court denies that part of the motion that seeks to compel the disclosure of the gas headspace chromatography reports.

Accordingly, it is ordered that defendant's motion to compel is granted to the extent the People have not provided the calibration report that is most recent to defendant's arrest and 30 days thereafter, and is otherwise denied.