OPINION OF THE COURT
Armando Montano, J.
The People’s motion for an order pursuant to CPLR 2221 (d), for leave to reargue this court’s oral decision dated February 17, 2015, is granted. Upon reargument, this court adheres to its prior decision.
Defendant is charged with the misdemeanors of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [2-a] [a]; [3]) and the traffic infraction of driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]).
According to the accusatory instrument, on January 22, 2011 at approximately 3:12 a.m., Police Officer Jerome Bonser observed defendant operating a 1997 Honda Accord at the northeast corner of East 241st Street and Furman Avenue in Bronx County. Upon approaching defendant, Officer Bonser observed defendant to have bloodshot, watery eyes, slurred and incoherent speech, and the moderate smell of an alcoholic beverage emanating from his breath. Defendant stated in sum and substance to Officer Bonser, “I had a Corona eight hours ago.” Defendant was placed under arrest and taken to the 47th Precinct where a breathalyzer test was administered. The test revealed defendant to have a blood alcohol content (BAC) of .196%; more than double the legal limit.
On or about February 5, 2015, defense counsel served upon the People a written demand for discovery seeking, inter alia, *584 “[a]ny written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action.” On the February 17, 2015 court appearance, defense counsel demanded the production of the calibration reports and the maintenance logs for the Intoxilyzer 5000EN. By oral decision dated February 17, 2015, this court directed the People to turn over to defendant all maintenance logs related to the Intoxilyzer on or before March 16, 2015. Although the People have turned over the calibration reports, the People have not produced any of the requested maintenance logs.
The People argue that this court misapplied the law and exceeded its authority by ordering the production of all maintenance logs pertaining to the Intoxilyzer used in the instant case. The People assert that they have fully complied with their discovery obligations pursuant to CPL 240.20 (1) (k) by producing the most recent calibration reports prior to defendant’s test and the most recent field inspection reports that preceded and followed defendant’s test. The People aver that defendant is not entitled to the maintenance logs and compelling the People to produce same is unreasonable and an impermissible expansion of CPL 240.20 (1) (k).
The People also contend that the material defendant seeks is neither relevant nor material to challenging the accuracy of the test results and is rather a ploy by defendant to engage in a fishing expedition for impeachment material. The People note that defendant has not specified a time period for the requested maintenance logs. The People argue that the complete maintenance history of the Intoxilyzer has no bearing on its operability on the date defendant submitted to a breath analysis. It is the People’s belief that defendant only seeks these maintenance records in order to confuse witnesses with dates of immaterial maintenance records of the Intoxilyzer used. Moreover, when considering the high volume and frequency of DWI cases, the People maintain that they would be unduly burdened with tedious discovery and production requests for maintenance logs for an unspecified period of time, which could include the lifetime of the machine, approximately 10 years.
Finally, the People refer to a number of instances where they have successfully commenced CPLR article 78 proceedings challenging court-ordered discovery beyond the scope of CPL *585 article 240.[1] The People assert that the appellate courts in these cases held that the trial courts acted in excess of their authorized power to compel discovery not permitted under CPL article 240.
Defendant agrees with the People that the court may not order the production of discovery unless it is specifically authorized by statute. However, defendant notes that he requests the production of maintenance logs pursuant to CPL 240.20 (1) (c), which requires the production of “[a]ny written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action . . . which was made by . . .a public servant engaged in law enforcement activity.” Defendant argues that the maintenance records fall squarely within the documents required to be produced under CPL 240.20 (1) (c). Defendant challenges the People’s narrow reading of CPL 240.20 (1) (k) and avers that the statute explicitly provides that the listed items are discoverable “in addition to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States.”
With respect to the People’s characterization of his discovery request as a fishing expedition for impeachment material, defendant avers that such a claim is unwarranted and mistaken. Defendant clarifies his request and demands the production of the maintenance logs for the time period one year prior to and six months following the date of his arrest. Defendant further argues that the failure to provide these documents will deprive him of a fair trial by limiting his right to challenge the reliability of the Intoxilyzer used since the maintenance logs he seeks are possibly the most reliable record of whether the Intoxilyzer used was accurate and in good working condition.
Defendant also takes issue with the People’s argument claiming that the production of the maintenance logs would be unduly burdensome in future DWI cases. Defendant points out that the People have made no showing and have alleged no facts to demonstrate that the compelled disclosure of these maintenance logs would be burdensome. Defendant reiterates that he does not seek all of the maintenance logs, spanning the *586 life of the machine. Rather, his request for documents is limited in time, these documents are routinely kept by the police, and they have been turned over in the past in this county.
A motion for leave to reargue “shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion.” (CPLR 2221 [d] [2].)
“ ‘A motion for reargument, addressed to the discretion of the court, is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principle of law. Its purpose is not to serve as a vehicle to permit the unsuccessful party to argue once again the very questions previously decided.’ ” (Mangine v Keller, 182 AD2d 476, 477 [1st Dept 1992], quoting Foley v Roche, 68 AD2d 558, 567 [1st Dept 1979].)
Upon consideration of the parties’ submissions, the People’s request for leave to reargue this court’s February 17, 2015 oral decision is granted.
Unless constitutionally or otherwise mandated, items not identified in CPL article 240 are not subject to discovery. (People v Colavito, 87 NY2d 423 [1996].) Criminal discovery, “embodied in article 240 [of the CPL], . . . evinces a legislative determination that the trial of a criminal charge should not be a sporting event” and that “[b]roader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence.” (People v Copicotto, 50 NY2d 222, 226 [1980].)
Although “the scientific reliability of breathalyzers in general is no longer open to question” (People v Mertz, 68 NY2d 136, 148 [1986]), the People must still lay a proper foundation before the results of a chemical breath analysis can be introduced at trial. (People v Freeland, 68 NY2d 699 [1986].) In order to introduce the results of a breathalyzer test, the People are required to “introduce evidence from which the trier of fact could reasonably conclude . . . that the testing device was in proper working order at the time the test was administered to the defendant.” (Id. at 700.) A defendant may attack the accuracy of test results by demonstrating either that the proper *587 operating procedures were not followed or the machine was not operating properly. (People v English, 103 AD2d 979 [3d Dept 1984].)
This court finds the People’s reading of CPL 240.20 (1) (k) to be unsound and inconsonant with the rules of statutory interpretation. When interpreting a statute, the court’s primary consideration is to ascertain and give effect to the intent of the legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 94.) The clearest indicator of legislative intent is found in the statutory text itself and therefore “the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].) Moreover,
“[i]n construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning.” (Tompkins v Hunter, 149 NY 117, 122-123 [1896].)
Where, as here, the statutory language is clear and unambiguous, this court shall construe such language so as to give effect to its plain meaning. (See Bender v Jamaica Hosp., 40 NY2d 560 [1976]; New Amsterdam Cas. Co. v Stecker, 3 NY2d 1 [1957]; Meltzer v Koenigsberg, 302 NY 523 [1951].)
CPL 240.20 (1) (c) provides for the disclosure of the following:
“Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.”
In a Vehicle and Traffic Law prosecution, CPL 240.20 (1) (k) provides for the disclosure of the following:
“[A]ny written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of *588 machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.”
CPL 240.20 (1) (k) explicitly provides that the listed items are discoverable “in addition to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States.” (Emphasis added.) Moreover, CPL 240.20 (1) (c) mandates the disclosure of any written report or document concerning a scientific test, such as the breathalyzer. Had the legislature intended for CPL 240.20 (1) (k) to limit the discoverable items to only the most recent record of inspection, or calibration or repair, then the legislature would not have placed the word “including” immediately before the listed items. Therefore, the listed items do not constitute an exhaustive list, but instead are merely examples of discoverable material.
Furthermore, materials not expressly listed in CPL 240.20 (1) (k) have been held to be discoverable including: records indicating that a machine may not have been in good operational order, State Police rules and regulations, the operational checklist, and calibration records (Matter of Constantine v Leto, 157 AD2d 376 [3d Dept 1990]); breathalyzer technician’s operating permit and weekly test record (People v Erickson, 156 AD2d 760 [3d Dept 1989]); computer source code governing operation of a breath machine (People v Robinson, 53 AD3d 63 [2d Dept 2008]); alcohol drug influence report form, test record and operational check list, central testing unit work sheet, maintenance logs, ampoule test record, certifications, and report of analysis of simulator solution (People v Di Lorenzo, 134 Misc 2d 1000 [Nassau County Ct 1987]); and documents relating to ampoule analysis and simulator solution analysis (People v Crandall, 228 AD2d 794 [3d Dept 1996]).
In People v White (45 Misc 3d 694 [Crim Ct, NY County 2014]), the defendant requested numerous documents, including maintenance logs, “in an effort to bolster his defense that the machine was not working properly at the time of his test.” (Id. at 696.) In denying the defendant’s motion, the court held *589 that the defendant needed to make some factual showing to demonstrate that the maintenance records contained information calling into question the reliability of the Intoxilyzer 5000EN used. Since the defendant had made no such showing, the court determined that the defendant was not entitled to such records.
In People v Ramrup (45 Misc 3d 1227[A], 2014 NY Slip Op 51740[U] [Sup Ct, Bronx County 2014]), the court granted the defendant’s motion to compel disclosure and directed the People to provide, inter alia, all records related to the maintenance, calibration, inspection, check and/or other tests performed on the Intoxilyzer 5000EN used for the time period one year prior to and six months following defendant’s arrest. In granting the defendant’s motion, the court noted that the People’s case against the defendant relied heavily upon the results of the Intoxilyzer 5000EN and as such the defendant was entitled to the documents. The court further held that the defendant’s demand was “neither overbroad nor extensively burdensome” and was rather, “specific, reasonable, and entirely related to the operation of the Intoxilyzer used.” (Ramrup, 2014 NY Slip Op 51740[U], *3 [emphasis added].)
More recently, in People v Tejeda (Crim Ct, Bronx County, Feb. 4, 2015, Hornstein, J., docket No. 2014BX020711), the court directed the People, pursuant to CPL 240.20 (1) (k), to provide the defendant with inspection, calibration and repair reports for the Intoxilyzer 5000EN used for tests which immediately preceded and succeeded the defendant’s test. The court further directed the People to provide the defendant with maintenance logs for the Intoxilyzer 5000EN used for the period of one month prior to and one month subsequent to the administration of the defendant’s test. The court determined that the inclusion of the superlative adjective “most recent” to modify inspection, calibration, and repair records demonstrated the legislature’s intent of imposing time limitations on the records to be disclosed.
By only having provided defendant with the most recent calibration reports prior to defendant’s test and the most recent field inspection reports that preceded and followed defendant’s test, the People have failed to completely satisfy their obligations pursuant to CPL article 240. CPL 240.20 (1) (k) mandates the disclosure of the “most recent” records of calibration. As such, the People are hereby directed to provide defendant with the most recent calibration report that followed defendant’s test.
*590 This court further finds that the rationales espoused by both the Ramrup court and the Tejeda court give effect to the plain meaning of CPL 240.20 (1) (c) and (k). Maintenance logs for the Intoxilyzer, which would demonstrate whether the device had any malfunctions or required repairs, fall squarely within the purview of both CPL 240.20 (1) (c) and (k). Since evidence of a defendant’s BAC is often dispositive in DWI cases, a “defendant may not be denied discovery which prevents him from challenging the reliability and accuracy of the machine.” (People v Alvarez, 70 NY2d 375, 380 [1987], citing People v English, 103 AD2d 979 [3d Dept 1984].) Defendant should be afforded a full and fair opportunity, through pretrial discovery, to challenge the reliability of the Intoxilyzer.
In reliance on Ramrup, defendant requests the disclosure of maintenance logs for the period of one year prior to and six months following the date of his arrest. However, it is unclear to this court as to how often maintenance was performed on the Intoxilyzer used to administer the test to defendant. The Department of Health Regulations provide that “[m]aintenance [of breath analysis instruments] shall be conducted as specified by the training agency,[2] and shall include, but shall not be limited to, calibration at a frequency as recommended by the device manufacturer or, minimally, annually.” (10 NYCRR 59.4 [c].) At the very least, the Intoxilyzer must be maintained once per year. Should this court set a definitive time period for the disclosure of the maintenance logs, it is possible that no such record would exist if maintenance was performed outside the time period set. Therefore, to ensure that defendant receives the maintenance logs to which he is entitled, the People are directed to provide defendant with the most recent maintenance logs for the Intoxilyzer that preceded and followed the administration of defendant’s test. Finally, as the disclosure of the maintenance logs is limited in temporal scope, the People will not be unduly burdened by producing same.
Accordingly, the People’s motion for leave to reargue this court’s oral decision dated February 17, 2015 is granted. Upon reargument, this court adheres to its prior decision. The People are hereby ordered to provide defendant with the most recent calibration report for the Intoxilyzer 5000EN used that fol *591 lowed defendant’s test and the most recent maintenance logs for the Intoxilyzer 5000EN used that preceded and followed the administration of defendant’s test within 30 days of receipt of this decision and order.

. Matter of Brown v Grosso, 285 AD2d 642 (2d Dept 2001); Matter of Brown v Blumenfeld, 296 AD2d 405 (2d Dept 2002); Matter of Catterson v Jones, 229 AD2d 435 (2d Dept 1996); Matter of Brown v Appelman, 241 AD2d 279 (2d Dept 1998); Matter of Pirro v LaCava, 230 AD2d 909 (2d Dept 1996); Matter of Hynes v Cirigliano, 180 AD2d 659 (2d Dept 1992).

. The term “training agency” is defined as “the Office of Public Safety of the Division of Criminal Justice Services, the Division of State Police, the Nassau County Police Department, the Suffolk County Police Department, and/or the New York City Police Department.” (10 NYCRR 59.1 [d].)